ORIGINAL          **JUDGE BERMAN**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - X
                 :
UNITED STATES OF AMERICA   :   **SEALED INDICTMENT**
                 :
      - v. -      :   22 Cr.
                 :
STEPHEN BUYER,        :
                 :   **22 CRIM 397**
      Defendant.   :
                 :
- - - - - - - - - - - - - - - X

The Grand Jury charges:

### Summary of the Insider Trading Schemes

1.    STEPHEN BUYER, the defendant, is a former United States Congressman who represented Indiana's fifth Congressional district from in or about 1993 through in or about 2003 and its fourth Congressional district from in or about 2003 through in or about 2011.  Since 2011, BUYER has worked as a consultant, focusing on providing consulting services to private companies in areas in which BUYER gained expertise while in Congress.

2.    In the course of that consulting work, in 2018 and 2019, STEPHEN BUYER, the defendant, misappropriated material non-public information ("MNPI") that he learned as a consultant and used that MNPI to place timely, profitable securities trades in brokerage accounts in his own name and the names of others. In particular, BUYER obtained MNPI in connection with two corporate mergers related to his consulting work.  BUYER's fraudulent trading activity based on that MNPI resulted in

profits of at least approximately $349,846.61.  BUYER also tried
to cover up his insider trading by, among other things,
providing false and misleading information to representatives of
one of the companies for which he consulted in connection with
the company's inquiry into BUYER's trading.

### Relevant Entities and Individuals

3.     From in or about 1993 through in or about 2011,
STEPHEN BUYER, the defendant, was a United States Congressman.
During his time in Congress, BUYER served on the Committee on
Energy and Commerce and its Subcommittee on Communications and
Technology, which had oversight over the telecommunications
industry.  BUYER also served on the Committee on Veterans'
Affairs and the House Armed Services Committee.  After leaving
Congress, BUYER and a partner started a consulting firm.
BUYER's consulting work largely focused on areas in which he had
gained expertise in Congress: the telecommunications industry
and issues involving the United States Department of Veterans
Affairs and the United States Department of Defense.

4.     At all times relevant to this Indictment, T-Mobile
U.S. Inc. ("T-Mobile") was a telecommunications company
headquartered in the state of Washington.  T-Mobile's stock
traded on the NASDAQ under the ticker "TMUS."  STEPHEN BUYER,
the defendant, provided consulting services to T-Mobile from at
least in or about 2016 through at least in or about 2022.

2

5.   At all times relevant to this Indictment, Sprint Corporation ("Sprint") was a telecommunications company headquartered in Kansas.  On or about April 29, 2018, Sprint and T-Mobile publicly announced that they would enter into a business combination agreement, commonly known as a merger. Until Sprint and T-Mobile completed their merger in 2020, Sprint's stock traded on the New York Stock Exchange ("NYSE") under the ticker "S."

6.   At all times relevant to this Indictment, Guidehouse was a private company, based in Washington, D.C., that provided management and technology consulting services to government clients, including federal agencies.  Guidehouse was previously a part of the international professional services firm PricewaterhouseCoopers ("PwC"), handling its United States public sector business.  Guidehouse separated from PwC in or about July 2018 after the private equity firm Veritas Capital ("Veritas") acquired Guidehouse from PwC.  STEPHEN BUYER, the defendant, provided consulting services to Guidehouse and its predecessor from in or about January 2016 through in or about November 2019, including in connection with matters involving the Departments of Defense and Veterans Affairs.

7.   At all times relevant to this Indictment, Navigant Consulting Inc. ("Navigant") was a publicly traded global

professional services firm based in Chicago.  Navigant's stock
traded on the NYSE under the ticker "NCI."

## Overview of the Sprint Insider Trading Scheme

8.   From at least on or about March 29, 2018, through on
or about April 5, 2018, STEPHEN BUYER, the defendant,
misappropriated MNPI that he learned through his consulting work
for T-Mobile and, in violation of duties he owed to T-Mobile,
used that MNPI to make timely, profitable trades in Sprint stock
in advance of the April 29, 2018 announcement of the merger of
Sprint and T-Mobile.

9.   From on or about March 29, 2018, through on or about
April 5, 2018, STEPHEN BUYER, the defendant, purchased a total
of 112,675 shares of Sprint stock across four different
brokerage accounts.  Prior to those trades, BUYER had never
purchased Sprint stock in those accounts.

10.   In or about August 2018, STEPHEN BUYER, the defendant,
sold the Sprint stock he had purchased in all four brokerage
accounts for a profit of approximately $126,404.

## Relevant Duties of Confidentiality to T-Mobile

11.   At all times relevant to this Indictment, STEPHEN
BUYER, the defendant, by virtue of his work as a consultant for
T-Mobile, had an obligation to maintain the confidentiality of
information he received in connection with the consulting  work
he did for T-Mobile, and an obligation not to trade on that

4

information.

## BUYER Learns of the Renewed Merger Discussions and Trades on the Information

12.   In or about March 2018, members of T-Mobile's legal department informed certain executives in T-Mobile's Government Affairs group that discussions about a merger of Sprint and T-Mobile, which had previously been abandoned, had been renewed. The possibility of a merger was highly confidential, but T-Mobile's Government Affairs executives were authorized to mobilize a small, trusted group of lobbyists to develop a strategy for securing regulatory approvals and other forms of support for the merger.

13.   STEPHEN BUYER, the defendant, had a business and social relationship with one of those Government Affairs executives ("Executive-1").   BUYER and Executive-1 occasionally played golf together.   Executive-1 was also BUYER's primary contact at T-Mobile.

14.   In or about late March 2018, Executive-1 was made aware of the renewed merger discussions between T-Mobile and Sprint.   An entry in Executive-1's notes, dated March 27, 2018, indicates that his "To Do" list included outreach to consultants about the potential merger.   Executive-1 spoke by telephone with STEPHEN BUYER, the defendant, each of the preceding two days, as well as on March 28, 2018.   Also on March 28, 2018, BUYER and

Executive-1 played golf together during a golf trip they took to Miami, Florida.

15.   The next day, on the morning of March 29, 2018, STEPHEN BUYER, the defendant, purchased approximately 42,675 shares of Sprint in three different trading accounts, at a price of approximately $4.84 per share.  One of those trading accounts was shared jointly between BUYER and a relative whom BUYER had caused to make an investment that lost the relative hundreds of thousands of dollars, which BUYER had promised to pay back by generating trading profits.  Another one of those accounts was held in the name of a woman with whom Buyer previously had a romantic relationship and with whom he remained close friends ("Individual-1").

16.   Before the March 29, 2018 purchases of Sprint, Individual-1's account (the "Individual-1 Account") had not been used to purchase or sell any individual securities.

17.   In an effort to furnish a seemingly innocuous cover story for his purchases of Sprint, on or about April 2, 2018, STEPHEN BUYER, the defendant, printed records regarding Sprint from a stock research website ("Website-1") and made notes to himself purporting to speculate regarding the likelihood of an acquisition.

18.   On or about April 3, 2018, STEPHEN BUYER, the defendant, purchased an additional 10,000 shares of Sprint in his own account, at a price of approximately $4.94 per share.

19.   On or about April 4, 2018, STEPHEN BUYER, the defendant, received an email invitation to an April 16, 2018 meeting regarding the merger of Sprint and T-Mobile entitled "Meeting re: Business Update."

20.   On or about April 5, 2018, STEPHEN BUYER, the defendant, purchased an additional 60,000 shares of Sprint in his own account, at a price of approximately $5.20 per share.

21.   On or about April 10, 2018, multiple news outlets reported that Sprint and T-Mobile had re-engaged in negotiations regarding a potential merger.  That day, Sprint's stock price closed at $6.02 per share, up from the previous day's closing price of $5.14 per share.

22.   On or about April 29, 2018, Sprint and T-Mobile announced that they had executed a business combination agreement in a deal that would value Sprint stock at $6.62 per share.

23.   In or about August 2018, STEPHEN BUYER, the defendant, sold shares in Sprint in all four accounts for a total gain of over $126,000.

### Overview of the Navigant Insider Trading Scheme

24.   The T-Mobile-Sprint merger was not the only instance
in which STEPHEN BUYER, the defendant, engaged in insider
trading.  From at least on or about June 13, 2019, through on or
about August 1, 2019, BUYER misappropriated MNPI he learned
through his consulting work for Guidehouse and, in violation of
duties he owed to Guidehouse, used that MNPI to make timely
trades in Navigant stock in advance of the August 2, 2019
announcement that Guidehouse would acquire Navigant in a deal
valued at approximately $1.1 billion.

25.   From on or about June 12, 2019, through on or about
August 1, 2019, STEPHEN BUYER, the defendant, purchased a total
of 46,654 shares of Navigant stock across six different
brokerage accounts.  Prior to those trades, BUYER had never
purchased Navigant stock in those accounts.

26.   On or about August 2, 2019, STEPHEN BUYER, the
defendant, sold substantially all of the Navigant stock, for a
profit of over $223,000.

### Relevant Duties of Confidentiality to Guidehouse

27.   At all times relevant to this Indictment, STEPHEN
BUYER, the defendant, by virtue of his work as a consultant to
Guidehouse, had an obligation to maintain the confidentiality of
information received in connection with the consulting work he

8

did for Guidehouse, and an obligation not to trade on that information.

### BUYER Learns of Guidehouse's Potential Acquisition and Trades on the Information

28.  In or about March 2019, the Board of Directors of Navigant authorized an investment bank (the "Investment Bank") to launch a bid process for its sale.  The Investment Bank contacted multiple potential acquirers in March and April 2019. The possibility of an acquisition was highly confidential, and each of the potential acquirers was required to sign a non-disclosure agreement with Navigant.  One of the potential acquirers was Veritas, the private equity firm that owned Guidehouse.

29.  One of the primary contacts of STEPHEN BUYER, the defendant, at Guidehouse was a partner in Guidehouse's healthcare group ("Partner-1").  Partner-1 was aware of the potential acquisition by at least in or about April 2019.

30.  On or about June 6, 2019, the Investment Bank directed three potential acquirers, including Veritas, to submit final, binding proposals regarding the acquisition of Navigant by no later than July 9, 2019.

31.  During the evening of June 12, 2019, Partner-1 sent an email to a sales leader at Guidehouse ("Salesperson-1"), who was another contact of STEPHEN BUYER, the defendant, seeking

information on revenue synergies that the acquisition could create. The email referenced a potential "combination." Shortly after that, Salesperson-1 called BUYER, and they spoke for approximately five minutes. Salesperson-1 then called Partner-1 with a partial response to Partner-1's question. Salesperson-1 and BUYER spoke three additional times that evening.

32. Within several hours of the June 12, 2019 communications, STEPHEN BUYER, the defendant, had used the information that he learned during his confidential conversation with Salesperson-1 to determine that Guidehouse intended to purchase Navigant. Indeed, shortly before 1:00 AM on the morning of June 13, 2019, BUYER searched for Navigant's ticker on a brokerage website.

33. Several hours later, at 8:44 AM on June 13, 2019, STEPHEN BUYER, the defendant, emailed himself an analyst report from Website-1 listing Navigant as a strong stock pick. At 9:54 AM that day, BUYER emailed the analyst report to his son, with whom he shared a trading account, and wrote that he was "thinking of buying" Navigant stock. Consistent with his earlier use of Website-1 records in connection with his insider trading in Sprint, BUYER sent these emails in an effort to conceal his intent to trade on MNPI by creating the appearance of an innocent basis for his trading.

34.   STEPHEN BUYER, the defendant, did not wait for his son to respond to his 9:54 AM email.  Rather, at 10:06 AM, BUYER purchased a total of 28,300 shares of Navigant across three brokerage accounts, including the account he shared with his son, at prices ranging from $22.40 to $22.51 per share.

35.   STEPHEN BUYER, the defendant, continued trading in Navigant through on or about August 1, 2019.  The trades were placed in six accounts, including an account in his wife's name, the account he shared with his son, and the Individual-1 Account.  The trades were in the approximate amounts and prices on or about the dates listed below:

| Order Date | Number of Shares | Average Purchase Price per Share |
|---|---|---|
| June 21, 2019 | 825 | $23.55 |
| June 25, 2019 | 3,980 | $23.18 |
| July 9, 2019 | 129 | $23.15 |
| July 10, 2019 | 2,000 | $23.20 |
| July 19, 2019 | 3,700 | $24.35 |
| July 26, 2019 | 2,700 | $24.30 |
| August 1, 2019 | 5,020 | $24.22 |

36.   Between the time the Individual-1 Account was opened in or about 2017, and the time of the 2019 Navigant trades in the Individual-1 Account, the only other securities purchased or sold in the Individual-1 Account were the Sprint shares discussed above in paragraph 15.

37.   On or about August 2, 2019, Navigant and Guidehouse announced that Guidehouse had entered into an agreement to

11

acquire Navigant for $28 cash per share.  That day, Navigant's stock price closed at $28.06, an approximate increase of 17% over the August 1, 2019 closing price of $24.04.  STEPHEN BUYER, the defendant, sold all of the shares held in accounts in his or his wife's name that day, for a profit of approximately $223,442.61.

### The Cover-Up

38.  On or about October 31, 2019, STEPHEN BUYER, the defendant, was informed by counsel for Guidehouse that the Financial Industry Regulatory Authority ("FINRA") had contacted Guidehouse to inquire about potential insider trading in Navigant stock.  Counsel for Guidehouse then interviewed BUYER to collect information to respond to FINRA's inquiry.  During the interview regarding potential insider trading in Navigant stock, BUYER told counsel for Guidehouse, among other things, that: (i) he had purchased Navigant stock in his account and his son's account; (ii) he had made perhaps four purchases of Navigant stock; (iii) he bought more Navigant stock because the price went down; (iv) he was not privy to any conversations with Guidehouse about a potential transaction; and (v) he bought the Navigant stock based on two analyst reports.  BUYER did not disclose his communications with Salesperson-1, on June 12, 2019, to counsel for Guidehouse, nor did he tell counsel for Guidehouse about his trading in the Individual-1 Account.

12

39.   On or about November 2, 2019, in a further effort to cover up his scheme, STEPHEN BUYER, the defendant, sent Salesperson-1 a message over an encrypted messaging application stating:

> I need to see you.  Please . . . I will
> catch next flight.  I was interviewed and
> told them I bought and I figured it was
> either [another company] or Navigant on my
> own which is true and no one ever told me or
> uttered the word Navigant which is also true
> . . . I had seen [] research that recommend
> it around June 8 as a buy and had sent an
> Email to my son about it . . . he never
> replied.

### COUNT ONE
(Securities Fraud – T-Mobile/Sprint)

40.  The allegations contained in paragraphs 1 through 39 of this Indictment are hereby repeated, realleged, and incorporated by reference, as if fully set forth herein.

41.  On or about the dates set forth below, in the Southern District of New York and elsewhere, STEPHEN BUYER, the defendant, willfully and knowingly, directly and indirectly, by the use of the means and instrumentalities of interstate commerce, the mails and the facilities of national securities exchanges, in connection with the purchase and sale of securities, used and employed manipulative and deceptive devices and contrivances, in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by: (a) employing devices, schemes, and artifices to defraud; (b) making and causing to be

13

made untrue statements of material fact and omitting to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit on persons, to wit, BUYER traded based on MNPI in violation of the duty of trust and confidence he owed to T-Mobile, in connection with the securities transactions listed below on or about the dates listed below:

| Order Date | Transaction in Sprint Stock |
|---|---|
| March 29,2018 | Purchase of 20,000 shares |
| March 29, 2018 | Purchase of 20,000 shares |
| March 29, 2018 | Purchase of 2,675 shares |
| April 3, 2018 | Purchase of 10,000 shares |
| April 5, 2018 | Purchase of 60,000 shares |

(Title 15, United States Code, Sections 78j(b) & 78ff; Title 17, Code of Federal Regulations, Section 240.10b-5; and Title 18, United States Code, Section 2.)

## COUNT TWO
(Securities Fraud – T-Mobile/Sprint)

The Grand Jury further charges:

42.   The allegations contained in paragraphs 1 through 39 of this Indictment are hereby repeated, realleged, and incorporated by reference, as if fully set forth herein.

43.   From at least on or about March 29, 2018 through at least on or about April 5, 2018, in the Southern District of New York and elsewhere, STEPHEN BUYER, the defendant, knowingly

14

executed a scheme and artifice to (a) defraud persons in
connection with securities of an issuer with a class of
securities registered under Section 12 of the Securities
Exchange Act of 1934 and that was required to file reports under
Section 15(d) of the Securities Exchange Act of 1934, and
(b) obtain, by means of false and fraudulent pretenses,
representations, and promises, money and property in connection
with the purchase and sale of securities of an issuer with a
class of securities registered under Section 12 of the
Securities Exchange Act of 1934 and that was required to file
reports under Section 15(d) of the Securities Exchange Act of
1934, to wit, BUYER defrauded T-Mobile of confidential
information related to T-Mobile's renewed merger discussions
with Sprint by improperly converting information entrusted to
him for his own use, for the purpose of executing timely,
profitable securities transactions in Sprint stock.

   (Title 18, United States Code, Sections 1348 and 2.)

### COUNT THREE
(Securities Fraud — Guidehouse/Navigant)

 The Grand Jury further charges:

 44. The allegations contained in paragraphs 1 through 39
of this Indictment are hereby repeated, realleged, and
incorporated by reference, as if fully set forth herein.

 45. On or about the dates set forth below, in the Southern

15

District of New York and elsewhere, STEPHEN BUYER, the
defendant, willfully and knowingly, directly and indirectly, by
the use of the means and instrumentalities of interstate
commerce, the mails, and the facilities of national securities
exchanges, in connection with the purchase and sale of
securities, used and employed manipulative and deceptive devices
and contrivances, in violation of Title 17, Code of Federal
Regulations, Section 240.10b-5, by: (a) employing devices,
schemes, and artifices to defraud; (b) making and causing to be
made untrue statements of material fact and omitting to state
material facts necessary in order to make the statements made,
in light of the circumstances under which they were made, not
misleading; and (c) engaging in acts, practices, and courses of
business which operated and would operate as a fraud and deceit
on persons, to wit, BUYER traded based on MNPI in violation of
the duty of trust and confidence he owed to Guidehouse, in
connection with the securities transactions listed below on or
about the dates listed below:

| Order Date | Transaction in Navigant Stock |
|---|---|
| June 13, 2019 | Purchase of 28,300 shares |
| June 21, 2019 | Purchase of 825 shares |
| June 25, 2019 | Purchase of 3,980 shares |
| July 9, 2019 | Purchase of 129 shares |
| July 10, 2019 | Purchase of 2,000 shares |
| July 19, 2019 | Purchase of 3,700 shares |
| July 26, 2019 | Purchase of 2,700 shares |
| August 1, 2019 | Purchase of 5,020 shares |

(Title 15, United States Code, Sections 78j(b) & 78ff;
Title 17, Code of Federal Regulations, Section 240.10b-5; and
Title 18, United States Code, Section 2.)

## COUNT FOUR
(Securities Fraud - Guidehouse/Navigant)

The Grand Jury further charges:

46.   The allegations contained in paragraphs 1 through 39 of this Indictment are hereby repeated, realleged, and incorporated by reference, as if fully set forth herein.

47.   From at least on or about June 13, 2019, through at least on or about August 2, 2019, in the Southern District of New York and elsewhere, STEPHEN BUYER, the defendant, knowingly executed a scheme and artifice to (a) defraud persons in connection with securities of an issuer with a class of securities registered under Section 12 of the Securities Exchange Act of 1934 and that was required to file reports under Section 15(d) of the Securities Exchange Act of 1934, and (b) obtain, by means of false and fraudulent pretenses, representations, and promises, money and property in connection with the purchase and sale of securities of an issuer with a class of securities registered under Section 12 of the Securities Exchange Act of 1934 and that was required to file reports under Section 15(d) of the Securities Exchange Act of 1934, to wit, BUYER defrauded Guidehouse of confidential information related to Guidehouse's negotiations to acquire

17

Navigant by converting that information to his own use, for the purpose of executing timely, profitable securities transactions in Navigant stock.

(Title 18, United States Code, Sections 1348 and 2.)

## FORFEITURE ALLEGATION

48.  As a result of committing the offenses alleged in Counts One through Four of this Indictment, STEPHEN BUYER, the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461, any and all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of said offenses, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offenses.

### Substitute Assets Provision

49.  If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

a.   cannot be located upon the exercise of due diligence;

b.   has been transferred or sold to, or deposited with, a third party;

c.   has been placed beyond the jurisdiction of the court;

d.   has been substantially diminished in value; or

18

e.    has been commingled with other property which
cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21,
United States Code, Section 853(p) and Title 28, United States
Code, Section 2461, to seek forfeiture of any other property of
the defendant up to the value of the above forfeitable property.

(Title 18, United States Code, Sections 981(a)(1)(C);
Title 21, United States Code, Section 853(p); and
Title 28, United States Code, Section 2461.)

_____
FOREPERSON

_____
DAMIAN WILLIAMS
United States Attorney

19

Form No. USA-33s-274 (Ed. 9-25-58)

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

### UNITED STATES OF AMERICA

v.

### STEPHEN BUYER,

Defendant.

### SEALED INDICTMENT

22 Cr.

(15 U.S.C. §§ 78j(b) & 78ff;
17 C.F.R. § 240.10b-5;
18 U.S.C. §§ 1348 & 2.)

DAMIAN WILLIAMS
United States Attorney

Foreperson

7|21|22

Sealed Indictment, True Bill
+ Arrest Warrant filed before OTW
on 7/21/22.