UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

UNITED STATES OF AMERICA

     - v. -

STEPHEN BUYER,

               Defendant.

              22 Cr. 397 (RMB)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x


# THE GOVERNMENT'S OPPOSITION TO DEFENDANT STEPHEN BUYER'S PRETRIAL MOTIONS


DAMIAN WILLIAMS
United States Attorney
Southern District of New York

Kiersten A. Fletcher
Elizabeth Hanft
Danielle R. Sassoon
Assistant United States Attorneys
   *- Of Counsel -*

i

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT ........................................................................................................................ 1

I.     The Sprint and Navigant Counts are Properly Joined ............................................... 1

II.    There Is No Basis to Suppress Any Materials or to Hold a *Kastigar* Hearing ............... 6

    A.    The Documents Buyer Seeks to Suppress Are Not Privileged.................................... 6

        1.    Applicable Law........................................................................................ 7

        2.    Discussion........................................................................................... 11

    B.    The Filter Team Procedures Adequately Protected Buyer's Rights.......................... 21

        1.    Applicable Law....................................................................................... 21

        2.    Discussion........................................................................................... 23

    C.    There Is No Basis For Disclosure of the Grand Jury Minutes.................................. 25

III.   The Court Should Deny Buyer's Motion for a *Franks* Hearing .................................... 26

IV.    The Court Should Deny Buyer's *Brady* Motion ......................................................... 30

V.     The Court Should Deny Buyer's Motion for a Bill of Particulars ................................. 32

CONCLUSION...................................................................................................................... 35

## **TABLE OF AUTHORITIES**

### **Cases**

*Colton v. United States*, 306 F.2d 633 (2d Cir. 1962) ............................................................ 9, 14

*Dep't of Econ. Dev. v. Arthur Anderson & Co.*, 139 F.R.D. 295 (S.D.N.Y. 1991)..................... 10

*Duttle v. Bandler & Kass*, 127 F.R.D. 46 (S.D.N.Y. 1989)........................................................ 12

*Fisher v. United States*, 425 U.S. 391 (1976) ....................................................................... 7, 8, 9

*Gould Inc. v. Mistui Min. & Smelting Co., Ltd.*, 825 F.2d 676 (2d Cir. 1987)............................ 17

*Hickman v. Taylor*, 329 U.S. 495 (1947) ..................................................................................... 9

*In re Grand Jury Proceedings*, 219 F.3d 175 (2d Cir. 2000) ...................................................... 18

*In re Grand Jury Subpoena*, 103 F.3d 234 (2d Cir. 1996)........................................................... 25

*In re Grand Jury Subpoenas Dated March 19, 2022 and August 2, 2002*, 318 F.3d 379 (2d Cir. 2003) ......................................................................................................................... 16

*In re Parmalat Secs. Litig.*, 04 MD 16753 (LAK) (HBP), 2006 WL 3592936 (S.D.N.Y. Dec. 1, 2006) ........................................................................................................................ 20

*In re Philip Services Corp. Secs. Litig.*, 98 Civ. 835 (MBM) (DF), 2005 WL 2482494 (S.D.N.Y. Oct. 7, 2005) ................................................................................................................ 20

*In re Search Warrants Executed on Apr. 28, 2021*, No. 21-MC-425 (JPO), 2021 WL 2188150 (S.D.N.Y. May 28, 2021)................................................................................................ 22

*In re Six Grand Jury Witnesses*, 979 F.2d 939 (2d Cir. 1992)............................................. 7, 8, 12

*Kastigar v. United States*, 406 U.S. 441 (1972) ........................................................................... 7

*Matter of Grand Jury Subpoenas Dated Oct. 22, 1991, & Nov. 1, 1991*, 959 F.2d 1158 (2d Cir. 1992) .......................................................................................................................... 9, 14

iii

*Olan v. United States*, 141 S. Ct. 1040 (Jan. 11, 2021) .................................................... 5

*Ratliff v. Davis Polk & Wardwell*, 354 F.3d 165 (2d Cir. 2003) ................................... 9

*Renner v. Chase Manhattan Bank*, 98 Civ. 926 (CSH), 2001 WL 1356192 (S.D.N.Y. Nov. 2, 2001) ........................................................................................................................ 13

*SEC v. Stanard*, No. 06 Civ. 7736 (GEL), 2007 WL 1834709 (S.D.N.Y. June 26, 2007).......... 30

*Sec. Inv'r Prot. Corp. v. Bernard Madoff Inv. Secs.*, 319 F.R.D. 100 (S.D.N.Y. 2017) ............. 12

*TVT Records v. Island Def Jam Music Grp.*, 214 F.R.D. 143 (S.D.N.Y. 2003).............. 10, 12, 14

*United States v. Adlman*, 134 F.3d 1194 (2d Cir. 1998)................................................ 17

*United States v. Allen*, 14 Cr. 272 (JSR), 2016 WL 315928 (S.D.N.Y. Jan. 8, 2016)........... 11, 15

*United States v. Amato*, 15 F.3d 230 (2d Cir. 1994)..................................................... 2

*United States v. Ary*, 518 F.3d 775 (10th Cir. 2008) .................................................. 20

*United States v. Bellomo*, 263 F. Supp. 2d 561 (E.D.N.Y. 2003)................................. 33

*United States v. Blaszczak*, 947 F.3d 19 (2d Cir. 2019)................................................ 5

*United States v. Blau*, 159 F.3d 68 (2d Cir. 1998)........................................................ 23

*United States v. Bortnovsky*, 820 F.2d 572 (2d Cir. 1987) ......................................... 32

*United States v. Brown*, 744 F. Supp. 558 (S.D.N.Y. 1990)......................................... 28

*United States v. Canfield*, 212 F.3d 713 (2d Cir. 2000)............................................... 26, 27

*United States v. Ceglia*, No. 12-CR-876 (VSB), 2015 WL 1499194 (S.D.N.Y. Mar. 30, 2015). 22

*United States v. Chow*, 17 Cr. 667 (GHW) ................................................................. 34

*United States v. Correia*, 468 F. Supp. 3d 618 (S.D.N.Y. 2020)................................. 8, 10, 13, 14

*United States v. de la Jara*, 973 F.2d 746 (9th Cir. 1992) .......................................... 20

*United States v. DeFonte*, 441 F.3d 92 (2d Cir. 2006) ............................................... 10, 15

iv

*United States v. Dupree*, 781 F. Supp. 2d 115 (E.D.N.Y. 2011) .............................................. 22, 24

*United States v. Falso*, 544 F.3d 110 (2d Cir. 2008) ................................................................ 27

*United States v. Frey*, 19 Cr. 537 (DRH), 2022 WL 2359665 (E.D.N.Y. June 30, 2022) ............. 4

*United States v. Gibson*, 175 F. Supp. 2d 532 (S.D.N.Y. 2001).................................................. 25

*United States v. Gil*, 297 F.3d 93 (2d Cir. 2002) ...................................................................... 31

*United States v. Gordon*, 655 F.2d 478 (2d Cir. 1981)................................................................ 3

*United States v. Gruttadauria*, 439 F. Supp. 2d 240 (E.D.N.Y. 2006).......................................... 4

*United States v. Healey*, 860 F. Supp. 2d 262 (S.D.N.Y. 2012).................................................. 31

*United States v. Helmsley*, 726 F. Supp. 929 (S.D.N.Y. 1989) .................................................. 23

*United States v. Hoey*, No. 15 Cr. 229 (PAE), 2016 WL 270871 (S.D.N.Y. Jan. 21, 2016), *aff'd*,

   725 F. App'x 58 (2d Cir. 2018) .......................................................................... 23, 25

*United States v. Jones*, 16 F.3d 487 (2d Cir. 1994) .................................................................... 4

*United States v. Kovel*, 296 F.2d 918 (2d Cir. 1961) .................................................................. 7

*United States v. Lahey*, 967 F. Supp. 2d 698 (S.D.N.Y. 2013).................................................... 27

*United States v. Landji*, 18 Cr. 601 (PGG), 2021 WL 5402288 (S.D.N.Y. Nov. 18, 2021) ........ 11

*United States v. Leung*, 40 F.3d 577 (2d Cir. 1994) .................................................................. 25

*United States v. Lumiere*, No. 16. Cr. 483, 2016 WL 7188149 (S.D.N.Y. Nov. 29, 2016) ... 22, 24

*United States v. Martin*, 426 F.3d 68 (2d Cir. 2005) .................................................................. 26

*United States v. Mejia*, 655 F.3d 126 (2d Cir. 2011) .......................................................... 7, 8, 11

*United States v. Meszaros*, 06 Cr. 0290, 2008 WL 5113425 (E.D.N.Y. Nov. 25, 2008) .............. 3

*United States v. Mitlof*, 165 F. Supp. 2d 558 (S.D.N.Y. 2001).................................................... 33

*United States v. Moten*, 582 F.2d 654 (2d Cir. 1978) ................................................................ 25

*United States v. Nachamie*, 91 F. Supp. 2d 565 (S.D.N.Y. 2000) ................................................ 34

*United States v. Ohle* ("*Ohle I*"), No. 08 Cr. 1109 (JSR), 2011 WL 651849 (S.D.N.Y. Feb. 7,

2011) ...................................................................................................................................... 31

*United States v. Page*, 657 F.3d 126 (2d Cir. 2011) ............................................................... 2

*United States v. Parnas*, No. 19.Cr. 725 (JPO), 2021 WL 2981567 (S.D.N.Y. July 14, 2021) ... 31

*United States v. Patel*, No. 16 Cr. 798 (KBF), 2017 WL 3394607 (S.D.N.Y. Aug. 8, 2017) ...... 23

*United States v. Rajaratnam*, 719 F.3d 139 (2d Cir. 2013) ...................................................... 27

*United States v. Rigas*, 02 Cr. 1236 (LBS), 2008 WL 144824 (S.D.N.Y. Jan. 15, 2008) ........... 30

*United States v. Rittweger*, 259 F. Supp. 2d 275   (S.D.N.Y. 2003) .......................................... 32

*United States v. Rivera*, 546 F.3d 245 (2d Cir. 2008) ............................................................. 5

*United States v. Rubin/Chambers, Dunhill Ins. Servs.*, 825 F. Supp. 2d 451 (S.D.N.Y. 2011)

........................................................................................................................................ 31, 32

*United States v. Saad*, 380 F. Supp. 2d 286 (S.D.N.Y. 2005) ................................................... 3

*United States v. Salameh*, 152 F.3d 88 (2d Cir. 1998) ............................................................ 5

*United States v. Sampson*, 385 F.3d 183 (2d Cir. 2004) .......................................................... 4

*United States v. Schulte*, No. 17 Cr. 548 (PAC), 2019 WL 5287994 (S.D.N.Y. Oct. 18, 2019)

................................................................................................................................ 11, 23, 24

*United States v. SDI Future Health, Inc.*, 464 F. Supp. 2d 1027 (D. Nev. 2006) ........................ 23

*United States v. Sharma*, No. 18-CR-340 (LGS), 2019 WL 3802223 (S.D.N.Y. Aug. 13, 2019)

.......................................................................................................................... 22, 23, 24

*United States v. Silver*, 103 F. Supp. 3d 370 (S.D.N.Y. 2015) ................................................ 25

*United States v. Spinelli*, 352 F.3d 48 (2d Cir. 2003) ............................................................. 5

*United States v. Stewart*, 15 Cr. 287 (LTS) (S.D.N.Y. 2016) ........................................................ 35

*United States v. Swanson*, 210 F.3d 788 (7th Cir. 2000) ............................................................ 28

*United States v. Trippe*, 171 F. Supp. 2d 230 (S.D.N.Y. 2001) .................................................. 34

*United States v. Walker*, 243 F. App'x 621 (2d Cir. 2007) ....................................................... 9, 14

*United States v. Walsh*, 194 F.3d 37 (2d Cir. 1999) ................................................................ 32

*United States v. Walters*, 16 Cr. 338 (PKC) ......................................................................... 33

*United States v. Wey*, No. 15 Cr. 611 (AJN), 2017 WL 237651 (S.D.N.Y. Jan. 18, 2017) ......... 34

*United States v. Wilson*, 512 F. App'x 75 (2d Cir. 2013) ............................................................ 2

*United States v. Yousef*, 327 F.3d 56 (2d Cir. 2003) ................................................................ 22

*Valassis Commc'ns, Inc. v. News Corp.*, 17 Civ. 7378 (PKC), 2018 WL 4489285 (S.D.N.Y. Sept. 19, 2018) ......................................................................................................................... 10

*Wong Sun v. United States*, 371 U.S. 471 (1963) ..................................................................... 30

*Zafiro v. United States*, 506 U.S. 534 (1993) ...................................................................... 2, 5

## Other Authorities

PAUL RICE, ATTORNEY-CLIENT PRIVILEGE IN THE UNITED STATES § 9:33 (2021-2022 ed. Dec. 2021) ......................................................................................................................... 19

## Rules

Fed. R. Crim. P. 14(a) ............................................................................................................ 1, 2

Fed. R. Crim. P. 41(g) .............................................................................................................. 19

Fed. R. Crim. P. 6(e) ................................................................................................................. 25

Fed. R. Crim. P. 6(e)(3)(E)(ii) ................................................................................................... 25

Fed. R. Crim. P. 8(a) ................................................................................................................... 2

vii

Fed. R. Evid. 404(b)....................................................................................................................... 4

## <u>PRELIMINARY STATEMENT</u>

The Government respectfully submits this memorandum in opposition to defendant Stephen Buyer's motions for (1) severance, (2) suppression, (3) a *Kastigar* hearing, (4) a *Franks* hearing, (5) an order directing the Government to produce certain material, and (6) a bill of particulars. Buyer's motions should be denied.

Buyer, a former United States Congressman, misappropriated material non-public information ("MNPI") that he learned through his work as a consultant and used that MNPI to make timely and profitable trades. In an ongoing course of conduct, he engaged in this conduct in 2018 and again in 2019, both times obtaining MNPI in connection with corporate mergers and using accounts in his own name and in the names of others to place the trades. Buyer also provided false and misleading information to representatives of one of the companies for which he consulted when the company began an inquiry into Buyer's trading. In short, Buyer misappropriated information with which he was entrusted as a consultant so that he could buy stocks with an unlawful advantage, reaping illicit gains, and then lied about it.

In an effort to suppress the evidence the Government has amassed against him, Buyer casts unfounded aspersions at the Government's investigation and asks this Court to bless a fishing expedition. For the reasons discussed below, Buyer's motions should be denied.

## <u>ARGUMENT</u>

### I.    The Sprint and Navigant Counts are Properly Joined

Buyer's motion to sever the counts alleging insider trading in Sprint (the "Sprint counts") from those alleging insider trading in Navigant (the "Navigant counts") under Federal Rule of Criminal Procedure Rule 14(a) should be denied. (Br. 3-8). A joint trial would promote judicial economy given the overlap in proof with respect to each set of counts. Moreover, any potential

prejudice from a joint trial falls well short of being unfair: the supposedly prejudicial evidence would be admissible even at separate trials and any purported prejudice could be cured by means less drastic than severance, such as appropriate limiting instructions.

If the joinder of offenses "appears to prejudice a defendant or the government, the court may order separate trials of counts . . . or provide any other relief that justice requires." Fed. R. Crim. P. 14(a). A defendant who "seeks separate trials under Rule 14 carries a heavy burden of showing that joinder will result in substantial prejudice." *United States v. Amato*, 15 F.3d 230, 237 (2d Cir. 1994).[1] The defendant must show prejudice that is "unfair," and "not merely that [the defendant] might have had a better chance for acquittal at a separate trial." *United States v. Page*, 657 F.3d 126, 129 (2d Cir. 2011). The prejudice must be "sufficiently severe to outweigh the judicial economy" of a joint trial. *Id.* The rule "does not require severance even if prejudice is shown; rather, it leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion." *Zafiro v. United States*, 506 U.S. 534, 538-39 (1993).

As an initial matter, Buyer essentially concedes that under binding Circuit precedent, the counts are properly joined under Rule 8. (*See* Br. 3 & n. 2). Under Rule 8's "liberal standard for joinder of offenses," *United States v. Wilson*, 512 F. App'x 75, 76 (2d Cir. 2013), the Sprint and Navigant counts, which charge similar insider trading schemes are plainly of the "same or similar character," and part of a "common scheme or plan." Fed. R. Crim. P. 8(a).

Buyer is incorrect, however, that this is the "rare case in which the Court should grant severance" under Rule 14(a) of properly joined counts. (Br. 3). Contrary to Buyer's assertion, this is not a case with no connection between the charges and no overlap in evidence. (Br. 3-4).

---

[1] Unless otherwise noted, case quotations omit internal quotation marks, citations, and previous alterations.

Among other things, both schemes involved misappropriating information that Buyer learned of through his post-Congress work through his consulting company. In each case, he used multiple brokerage and bank accounts to carry out the relevant trades, including some of the same personal Charles Schwab accounts and an account in the name of a woman with whom he had previously had a romantic relationship ("Individual-1"), and whose account he accessed only to conduct the relevant trades in Sprint and Navigant. There will also be significant efficiencies from a joint trial, as the Government expects to call several witnesses who would testify regarding both Sprint and Navigant, including Buyer's former business partner, to provide key testimony as to the work of Buyer's consulting company, Buyer's prior industry focus and committee experience in Congress, and the relationships between Buyer and the representatives of both companies from which he misappropriated MNPI. In addition, the Government expects to call Individual-1, several bank records custodians, and at least one Special Agent with the FBI to provide testimony regarding both instances of insider trading. With such overlap, joinder is proper. *See, e.g.*, *United States v. Saad*, 380 F. Supp. 2d 286, 288 (S.D.N.Y. 2005) (denying motion to sever proxy fraud from securities fraud counts because defendant "is alleged to have participated in both frauds, both are alleged to have occurred during her tenure as CEO of Impath, . . . Saad allegedly made use of her professional position to further both schemes" and both are connected by a "common motivation"; collecting cases where joinder was proper); *United States v. Meszaros*, 06 Cr. 0290, 2008 WL 5113425, at *3-7 (E.D.N.Y. Nov. 25, 2008) (two wire fraud schemes at different employers properly joined; schemes involved defendant's false statements related to day trading, had similar structure, and were separated by less than a year); *see also United States v. Gordon*, 655 F.2d 478, 484-85 (2d Cir. 1981) (joinder proper, despite four separate fraud victims, because "Gordon allegedly misused his particular position to

3

accomplish his fraudulent purposes in each of the counts charged" and "Gordon's representations to the individuals named in the indictment were similar in nature").

The only cases on which Buyer relies where the denial of severance was reversed bear no resemblance to this case. (Br. 6). In *United States v. Sampson*, 385 F.3d 183, 193 (2d Cir. 2004), the Circuit reversed denial of a severance motion because the defendant made a "particularized showing" concerning testimony he would have given only at a severed trial—no such claim, much less a particularized showing, has been made here. And *United States v. Jones*, 16 F.3d 487, 493 (2d Cir. 1994), involved "retroactive misjoinder," where, for example, the Government's failure to establish an element of one of the charged crimes rendered joinder retroactively improper.[2]

Moreover, Buyer's prejudice argument fails because the evidence of each scheme would be admissible even at severed trials as direct evidence and as permissible evidence of motive, intent, modus operandi, lack of mistake or accident, and a common scheme or plan under Federal Rule of Evidence 404(b). A key disputed issue at the trial is likely to be Buyer's willfulness and intent. Buyer's suspicious trades in Sprint are indicative of his criminal intent with respect to the Navigant trades, and vice versa, and in particular lack of mistake. And the evidence will show that his conduct was part of a common scheme: to use inside information learned through his consulting work to turn an illicit profit, using multiple of the same brokerage accounts, including

---

[2] The district court cases cited by the defendant are similarly far afield. (Br. 6). *United States v. Frey*, 19 Cr. 537 (DRH), 2022 WL 2359665, at *2 (E.D.N.Y. June 30, 2022), involved severance of a gun charge that had no "logical connection, in law or in fact" to a sex trafficking and kidnapping charge. In *United States v. Gruttadauria*, 439 F. Supp. 2d 240, 252 (E.D.N.Y. 2006), the district court held that a gambling conspiracy was improperly joined with an unrelated money laundering conspiracy under Rule 8.

that of Individual-1. The illicit nature of each scheme is necessary context too for Buyer's use of Individual-1's account for only these two trades, which demonstrates his confidence in the trades, motive, consciousness of guilt, and efforts to conceal his crimes. *See United States v. Salameh*, 152 F.3d 88, 115 (2d Cir. 1998) (claim of prejudice is insupportable where supposedly prejudicial evidence would be admissible at separate trial); *see United States v. Blaszczak*, 947 F.3d 19, 44 (2d Cir. 2019) (joinder of insider trading charges was proper and, in any event, harmless, where evidence about separate insider trading scheme would have been admissible in separate trial as relevant and "useful background" on the defendant's methods and sources), *vacated on other grounds by* 141 S. Ct. 1040 (Jan. 11, 2021).

Buyer asserts that limiting instructions would not cure any prejudice because "in many circumstances jurors cannot be reliably expected to follow them." (Br. 6). This Circuit has routinely concluded otherwise in affirming denials of motions to sever. *See Zafiro*, 506 U.S. at 537-39 (explaining preference for joint trials to promote efficiency and that limiting instructions can often cure any prejudice); *United States v. Rivera*, 546 F.3d 245, 254 (2d Cir. 2008) (defendant's "generalized claim of prejudice" was insufficient where, among other things, the district court instructed the jury to "consider each count separately and return a separate verdict of guilty or not guilty for each" of them, and that verdict "must be unanimous as to each charge"); *United States v. Spinelli*, 352 F.3d 48, 55 (2d Cir. 2003).[3]  In light of overlapping proof, the substantial judicial economy from a joint trial, and the lack of unfair prejudice, Buyer's severance motion should be denied.

---

[3]  Buyer's suggestion that the jury would be less likely to abide by the Court's instructions because "the five counties from which jurors are drawn overwhelmingly lean Democratic" and Buyer is a fomer Republican congressman (Br. 4 n.3) finds no basis in law or logic.

II.     **There Is No Basis to Suppress Any Materials or to Hold a *Kastigar* Hearing**

    **A.  The Documents Buyer Seeks to Suppress Are Not Privileged**

Buyer suggests that an individual can shroud otherwise non-privileged evidence in privilege simply by virtue of emailing that evidence to himself. That is not the law.

In November 2019, Buyer sent several emails to himself containing screenshots of his own communications with non-lawyers, including individuals at Guidehouse (the "Screenshot Emails"). In executing a judicially authorized search warrant on one of Buyer's email accounts, the Government seized and reviewed the Screenshot Emails. The Screenshot Emails included the subject line "Privileged," but they were not privileged, for the reasons discussed below. Buyer contends, and the Government does not dispute, that Buyer later forwarded those emails (with one exception)[4] to his attorneys, but the Government's prosecution team did not see, and still has not seen,[5] those emails (the "Attorney Emails"). That is because a "filter team" for the Government had already screened out emails between Buyer and known attorneys as potentially privileged. Buyer details for the Court his retention of counsel in connection with a FINRA investigation into some of the conduct alleged in this case, meetings he had with counsel, and purported legal advice he received from counsel in connection with the screenshots contained within the Screenshot Emails, but the Government was not privy to any of that.

An affiant cited a handful of the Screenshot Emails in affidavits in support of search warrants in the Government's case. As Buyer notes, in several of the affidavits, the affiant in fact

---

[4]  The exception was a screenshot Buyer took of an encrypted message he sent over "Signal" to an insider at one of the companies for which he consulted (the "Signal Screenshot Email").

[5]  The prosecution team has not reviewed the Attorney Emails in an abundance of caution although, for the reasons discussed below, the Attorney Emails are also not privileged, and were merely screened out by the filter team as "potentially privileged."

mentioned that certain of the self-emails were marked "Privileged," in an effort to be fully transparent and accurate in characterizing the evidence for the issuing magistrate judges.[6] Because the Screenshot Emails were not privileged: (i) it was appropriate for the prosecution team to review them and to use them in search warrant affidavits; (ii) they should not be suppressed; (iii) there is no possible "taint" on the prosecution team, and therefore no need for a hearing pursuant to *Kastigar v. United States*, 406 U.S. 441 (1972); and (iv) the basis for Buyer's request that the Court order disclosure of grand jury minutes in this case has been mooted.

    1.  <u>Applicable Law</u>

    The attorney-client privilege protects communications: "(1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal advice." *United States v. Mejia*, 655 F.3d 126, 132 (2d Cir. 2011). Its purpose is to "encourage[] clients to confide in their attorney fully and frankly, free from the apprehension of disclosure." *In re Six Grand Jury Witnesses*, 979 F.2d 939, 943 (2d Cir. 1992). But "it may be invoked to hold secret *only* those communications made in confidence to a lawyer to obtain legal counsel that would not have been made without the existence of the privilege." *Id.* (emphasis added) (citing *Fisher v. United States*, 425 U.S. 391, 403 (1976); *United States v. Kovel*, 296 F.2d 918, 922 (2d Cir. 1961)). That is because the privilege stands as an "exception to the testimonial compulsion for every witness' evidence," and "[g]enerally, all relevant proof is

---

[6] Buyer argues that the Government failed to mention that Buyer had counsel. But the prosecution team did not know that Buyer had counsel in connection with its investigation, because the investigation was covert and, as explained above, the filter team had removed communications with counsel as potentially privileged. The prosecution team was aware that Buyer had communicated with an attorney at Buckley LLP at some point, as described *infra* at p. 23-24, but the Government had no information regarding the nature of that representation.

essential [for a] complete trial record" and for "confidence in the fair administration of justice." *Id*. Because of this tension, courts are to "apply the privilege only where necessary to achieve its purpose and construe the privilege narrowly because it renders relevant information undiscoverable." *Mejia*, 655 F.3d at 132. "'The burden of establishing the existence of an attorney-client privilege, in all of its elements, rests with the party asserting it.'" *United States v. Correia*, 468 F. Supp. 3d 618, 621 (S.D.N.Y. 2020).

For that reason, "[a]lthough an attorney-client communication is privileged and may not be divulged, . . . the underlying information or substance of the communication is not . . . so privileged." *In re Six Grand Jury Witnesses*, 979 F.2d at 945. And "a document is not privileged merely because it was sent or received between an attorney and client . . . it must contain confidential communication relating to legal advice." *Correia*, 468 F. Supp. 3d at 622. Applying the distinction between a confidential *communication*, which may be privileged, and the underlying *information*, which is not privileged, courts have resoundingly held that non-privileged materials do not become privileged merely because they are provided to a lawyer to obtain legal advice.

In *Fisher v. United States*, the Supreme Court squarely addressed this issue, analyzing a situation where taxpayers—upon learning they were under investigation for federal tax crimes— obtained various records from their accountants and transferred the records to their counsel in order to obtain legal advice. 425 U.S. at 393-94. The Court held that the attorney-client privilege posed no impediment to the government's demand for the documents because while "[c]onfidential disclosures by a client to an attorney made in order to obtain legal assistance are privileged," "[t]his Court and the lower courts have . . . uniformly held that pre-existing documents which could have been obtained by court process from the client when he was in

possession may also be obtained from the attorney by similar process following transfer by the client in order to obtain more informed legal advice." *Id.* at 403-04 (citing cases).

Indeed, as the Second Circuit held nearly sixty years ago, "pre-existing documents and . . . records not prepared by the [client] for the purpose of communicating with their lawyers in confidence . . . acquired no special protection from the simple fact of being turned over to an attorney." *Colton v. United States*, 306 F.2d 633, 639 (2d Cir. 1962); *see also United States v. Walker*, 243 F. App'x 621, 623-24 (2d Cir. 2007) ("putting otherwise non-privileged business records . . . in the hands of an attorney . . . does not render the documents privileged or work product" (citing *Ratliff v. Davis Polk & Wardwell*, 354 F.3d 165, 170-71 (2d Cir. 2003))). "Any other rule would permit a person to prevent disclosure of any of his papers by the simple expedient of keeping them in the possession of his attorney." *Colton*, 306 F.2d at 639; *see also Matter of Grand Jury Subpoenas Dated Oct. 22, 1991, & Nov. 1, 1991*, 959 F.2d 1158, 1165 (2d Cir. 1992) (attorney-client privilege did not apply to phone records "given by the client to his attorney in the course of seeking legal advice" because "[t]hose documents, though transmitted to [counsel], are not the client's confidential communications, are not within the privilege, and did not become exempt from discovery by that transmission" (citing *Fisher*, 425 U.S. at 403-04; *Hickman v. Taylor*, 329 U.S. 495, 508 (1947) ("the protective cloak of [attorney-client] privilege does not extend to information which an attorney secures from a witness"))).

Courts in this District have uniformly applied these precedents to reject the notion that preexisting documents are exempt from disclosure on attorney-client privilege grounds merely because they were conveyed to counsel in order to obtain legal advice. For example, in *Correia*, Judge Oetken held that the "'mere transmittal of non-privileged documents'" is not a privileged communication, and a package of materials sent to an attorney does not "become privileged

9

'merely because it was sent . . . between an attorney and client.'" *Correia*, 468 F. Supp. 3d at 622

(citing *TVT Records v. Island Def Jam Music Grp.*, 214 F.R.D. 143, 149 (S.D.N.Y. 2003); *Dep't*

*of Econ. Dev. v. Arthur Anderson & Co.*, 139 F.R.D. 295, 300 (S.D.N.Y. 1991)); *see also*

*Valassis Commc'ns, Inc. v. News Corp.*, 17 Civ. 7378 (PKC), 2018 WL 4489285, at *2

(S.D.N.Y. Sept. 19, 2018) ("The attorney-client privilege does not extend to preexisting

documents that a client sends to the client's lawyer. . . . Preexisting business documents that are

sent to a lawyer . . . cannot be affected by any after-the-fact advice received from the lawyer;

they are simply not privileged.").

    In certain cases, courts have also held that notes recorded for the purpose of later

discussions with attorneys, *which are then in fact conveyed to the attorneys*, are privileged. *See*

*United States v. DeFonte*, 441 F.3d 92, 95-96 (2d Cir. 2006). In *DeFonte*, the Second Circuit

suggested that an inmate's journal entries, which she created to, and in fact did, discuss with her

attorneys later, may be privileged. Conceding that the law was not "clear" as to the

characterization of such entries, the court analyzed two in-Circuit district court cases regarding

notes taken in anticipation of discussions with attorneys and noted that "[c]entral to the finding

of privilege in both decisions . . . [wa]s the fact that the notes were communicated by the client to

the attorney." *Id.* at 95-96. The *DeFonte* court noted that ultimate communication of the notes to

an attorney "comports with the language of the rule [about attorney-client privilege]—i.e., that

there be a *communication* by the client—and makes sense from a policy perspective." *Id.*

(emphasis in original). But "[a] rule that recognizes privilege for any writing made with an eye

toward legal representation would be too broad." *Id.* at 96. In *Allen*, Judge Rakoff held that

certain notes taken "pursuant to a direction from [an] attorney for the purpose of engaging in a

discussion with [the] attorney," which ultimately were communicated to a different attorney and

were only not conveyed to the same attorney "as a consequence of intervening events," were also privileged. *United States v. Allen*, 14 Cr. 272 (JSR), 2016 WL 315928, at *2 (S.D.N.Y. Jan. 8, 2016); *see also United States v. Landji*, 18 Cr. 601 (PGG), 2021 WL 5402288, at *16-17 (S.D.N.Y. Nov. 18, 2021) (handwritten notes taken by client, without evidence that they were discussed with attorney or used as an outline for discussions with attorney, not privileged).

    2.  <u>Discussion</u>

      Buyer transmitted evidence in his possession from one of his electronic devices (presumably his phone) to another (his email). The underlying evidence—that is, the messages themselves—are not privileged, and Buyer does not so argue. Instead, Buyer would have this Court hold that, because he sent evidence to himself, and then forwarded some—but not all—of that evidence to his attorneys, the underlying evidence is thereby rendered privileged. The Court should dismiss that manifestly incorrect argument.

      *First*, the Screenshot Emails are from Buyer to Buyer, and do not include communications with an attorney. The Screenshot Emails consist of communications with non-lawyers contemporaneous with the charged conduct (or, in the case of the Signal text, not long thereafter), in some cases about the charged conduct. They plainly do not meet the first prong of establishing that materials are privileged—that such materials be communications "between a client and an attorney." *See Mejia*, 655 F.3d at 132. Buyer's use of the word "privileged" in the subject line cannot confer privilege where it does not exist in order to shield incriminating evidence from scrutiny. Indeed, there is no "authority for the proposition that materials can become privileged by the simple expedient of labelling them as such." *United States v. Schulte*, 17 Cr. 548 (PAC), 2019 WL 5287994, at *3 (S.D.N.Y. Oct. 18, 2019); *see also id.* ("The Defendant cites no authority for the proposition that notebooks self-labelled as 'attorney-client

11

privilege' are categorically immunized from cursory review during a search pursuant to a warrant."). That is especially so for the Signal Screenshot Email, which was never sent to an attorney at all.

*Second*, although the Government has not seen, and does not seek to introduce, the Attorney Emails into evidence, even the Attorney Emails are not privileged. That is because they do not contain *confidential communications* to Buyer's attorneys. They simply contain underlying evidence that is not itself privileged. It is black-letter law that "[a]lthough an attorney-client communication is privileged and may not be divulged, the underlying information or substance of the communication is not . . . so privileged." *In re Six Grand Jury Witnesses*, 979 F.2d at 945. The Screenshot Emails contain nothing aside from such nonprivileged "underlying information" and, so far as the Government's prosecution team is aware, neither do the Attorney Emails. For example, the Government is not aware of anything within the emails that conveys an assertion from Buyer regarding why he included the particular communications he did, or what legal advice, if any, he was seeking by enclosing the materials. At most, then, the Attorney Emails are simply "cover communications" or "transmittal letters" intending to do no more than convey the enclosed materials. Such communications are not privileged. *See Sec. Inv'r Prot. Corp. v. Bernard Madoff Inv. Secs.*, 319 F.R.D. 100, 104 (S.D.N.Y. 2017) ("'[C]over' communications" or "transmittal letters" to counsel that "enclose or attach other documents" "do not reveal any privileged communications" and are not privileged.); *Duttle v. Bandler & Kass*, 127 F.R.D. 46, 52 (S.D.N.Y. 1989) (rejecting assertion of privilege over "transmittal letters [that] do not contain confidential communications" and "merely convey preexisting documents" to counsel); *TVT Records*, 214 F.R.D. at 149 ("no basis" for claim of privilege over a "cover sheet contain[ing] no substantive information whatsoever," which "mere[ly] transmitt[ed] non-

privileged documents" to counsel); *Renner v. Chase Manhattan Bank*, 98 Civ. 926 (CSH), 2001 WL 1356192, at *5 (S.D.N.Y. Nov. 2, 2001) (rejecting assertion of privilege over a "cover sheet" used by client to send non-privileged materials to counsel via fax (citing cases))). Sending underlying information to counsel does not render it privileged. Just as an individual cannot shield evidence of a crime by labeling it privileged, he likewise cannot shield it by simply providing it—whether in person or by email—to an attorney. Any other rule would contravene decades' worth of clear instruction from the courts that the attorney-client privilege should be construed narrowly because it "stands in derogation of the search for truth." *Correia*, 468 F. Supp. 3d at 621.

*Correia* is instructive in this regard. In that case, in response to legal advice from attorneys, the defendant (who had been informed of charges and was to self-surrender upon returning to the United States) sent his attorney a DHL package including two notebooks, a hard drive, a computer, and a smartphone. 468 F. Supp. 3d at 621. The Government obtained a search warrant for the entire DHL package. *Id.* Correia moved to suppress all evidence found in the DHL package on the basis of attorney-client privilege and the attorney work product doctrine.

Judge Oetken denied the motion, reasoning that the materials were not privileged simply because they were "sent to counsel for the purpose of obtaining legal advice." *Id.* at 622. The materials did not contain "confidential communication relating to legal advice"—rather, they were simply "materials that . . . might be relevant to the preparation of [the] defense." *Id.* Judge Oetken noted that there was "no letter or other document that discussed even in vague terms the legal advice being sought," and noted that "the preexisting nature of the documents [was] vitally important." *Id.* Observing that, had the defendant simply handed his notebooks and electronic devices to his counsel personally, the documents would not be privileged, Judge Oetken further

13

reasoned that there was nothing about the "package itself or the fact that it was sent, rather than hand delivered, that creates privilege." *Id.* Finally, Judge Oetken reasoned that, "to allow this vast swath of materials to be considered privileged is the antithesis of this Court's mandate to narrowly construe the attorney-client privilege. Indeed, such an exception would swallow the rule: by simply sending to counsel all materials that could potentially be relevant, a client could render all material in her case privileged and concealed from the opposing party." *Id.* at 623-24.

So too here. The underlying information contained in the Screenshot Emails is not privileged. Buyer has not argued that it is, nor could he. The Screenshot Emails are, like the materials in *Correia*, nonprivileged evidence. Had Buyer simply handed them to counsel, the Government could have subpoenaed them. *See id.* at 622. And nothing about their transmission renders them privileged. *See TVT Records*, 214 F.R.D. at 149 (mere transmittal of non-privileged documents is not a privileged communication); *see also Colton*, 306 F.2d at 639 ("pre-existing documents and . . . records not prepared by the [client] for the purpose of communicating with their lawyers in confidence . . . acquired no special protection from the simple fact of being turned over to an attorney"); *Walker*, 243 F. App'x at 623-24 ("putting otherwise non-privileged business records . . . in the hands of an attorney . . . does not render the documents privileged or work product"); *Matter of Grand Jury Subpoenas Dated Oct. 22, 1991, & Nov. 1, 1991*, 959 F.2d at 1165 (phone records given by client to attorney in course of seeking legal advice not privileged because they were not the client's confidential communications and did not become exempt from discovery by transmission to counsel).

Buyer argues that his screenshots are privileged "under the same reasoning that protects clients notes and outlines," because "[l]ike notes or outlines, screenshots of text messages do not simply exist in the normal course of business" and "[a]n affirmative step must be taken to create

14

[a screenshot]." (Br. 11). But taking notes or making an outline is additive and in some cases reveals deliberations, brainstorming, and mental processes that may bear on privileged defense strategy and may reveal the substance of attorney-client communications. Taking a screenshot and emailing it to an attorney, on the other hand, is the equivalent of retrieving a physical document, photocopying it, and giving it to an attorney. It involves no commentary or information other than the underlying nonprivileged evidence itself. A screenshot contains no analysis created at the direction of a lawyer and no reflections in the aftermath of criminal conduct for the purpose of seeking legal advice, and is not privileged.

Buyer is asking the Court to suppress emails to *himself*, including the Signal Screenshot Email, which was not even ultimately sent to an attorney. (Br. 11). Buyer's reliance on *DeFonte* is misplaced. *DeFonte* held that notes taken for later discussion with attorneys which are then actually conveyed to the attorneys may be privileged. But *DeFonte* relied in part on the actual transmission of those notes to the attorneys, reasoning that a rule "recogniz[ing] privilege for any writing made with any eye toward legal representation would be too broad." *DeFonte*, 441 F.3d at 96. Buyer argues that *Allen* held that even if those notes are not so conveyed, they are privileged so long as they were taken for the purpose of discussing with attorneys. Buyer misconstrues *Allen*, where the notes in question were ultimately communicated to a different attorney and were only not conveyed to the same attorney "as a consequence of intervening events." 2016 WL 315928 at *2. And Buyer's proposed rule is plainly inadministrable—the Government cannot be expected to intuit that a person is sending material to himself for purposes of a future discussion with an attorney.[7]

---

[7] The prosecution team does not know one way or the other whether counsel explicitly directed

As to the Signal message contained within the Signal Screenshot Email, in any event, the Government independently seized that message in another way: it was contained within the "images" saved on Buyer's iCloud. Buyer provides no reason why an image saved on an individual's phone (and therefore accessible through iCloud) is privileged (or how the Government could possibly be expected to make that determination when reviewing seized evidence), even though the Government informed Buyer before he filed the instant motion of this independent source of the Signal message. The image is not privileged, and therefore the Government has an independent basis to review, and introduce into evidence, that message, unrelated to the Court's determination of attorney-client privilege or work product protection.

Buyer's last-ditch attempt to argue that the Screenshot Emails should be suppressed is based on the attorney work product doctrine. But that doctrine, too, is inapposite here. The attorney work product doctrine "provides qualified protection for materials prepared by or at the behest of counsel in anticipation of litigation or for trial." *In re Grand Jury Subpoenas Dated March 19, 2022 and August 2, 2002*, 318 F.3d 379, 383 (2d Cir. 2003). "[T]he party invoking [the work product doctrine] bears the burden of establishing its applicability," and the "burden is a heavy one," in light of the "fundamental maxim . . .that the public has a right to every man's evidence." *Id.* at 384.

The underlying communications attached to the Screenshot Emails are not themselves

---

Buyer to collect such evidence and send it to counsel, because the portions of the affidavits submitted in support of Buyer's motion that appear to relate to this issue are redacted from the public filing and were provided to the Court *ex parte* and *in camera*. But it does not matter, again, because Buyer does not claim that the *underlying information* transmitted in the Screenshot Emails or the Attorney Emails was prepared for the purpose of communicating confidentially with the attorneys. It clearly was not.

work product (and again, Buyer does not so argue)—they definitionally were not prepared in anticipation of litigation or for trial. "It is well established that the work-product privilege does not apply to documents that are prepared in the ordinary course of business or that would have been created in essentially similar form irrespective of the litigation." *United States v. Adlman*, 134 F.3d 1194, 1202 (2d Cir. 1998). The Screenshot Emails therefore also cannot be attorney work product. Preservation of evidence by taking a photograph of it and transmitting it does not "result from the thought processes of attorneys seeking to gather facts to represent their clients responsibly." (Br. 13). Buyer cannot and has not explained how it did.

Work-product protection does not "shield . . . materials in an attorney's possession that were prepared neither by the attorney nor his agents." *In re Grand Jury Subpoenas*, 318 F.3d at 384; *see also In re Grand Jury Subpoenas*, 959 F.2d at 1166-67 (rejecting work product claim with respect to telephone company records in possession of former attorneys of criminal target). And although a "narrow exception" to this principle exists where the material in question has been selected and compiled in such a way that "the party asserting the privilege . . . show[s] 'a real, rather than speculative, concern' that counsel's thought processes 'in relation to pending or anticipated litigation' will be exposed through disclosure of the compiled documents," "[n]ot every selection and compilation of third-party documents . . . transforms that material into attorney work product." *In re Grand Jury Subpoenas*, 318 F.3d at 386 (quoting *Gould Inc. v. Mistui Min. & Smelting Co., Ltd.*, 825 F.2d 676, 680 (2d Cir. 1987)).

Buyer has not even attempted to demonstrate a particular concern that the selection by Buyer of the underlying communications in the Screenshot Emails reveals counsel's thought processes, merely asserting in conclusory fashion that it does. (*See* Br. 13). And the nature of the Screenshot Emails themselves demonstrates he could not, because they are simply a mix of

17

communications with potential witnesses regarding, and contemporaneous with, the underlying

conduct. Reviewing the Screenshot Emails (which again, are from Buyer to Buyer, not to any

attorneys) revealed nothing to the Government about Buyer's counsel's "defense planning." *See*

*Correia*, 468 F. Supp. 3d at 624; *see also In re Grand Jury Subpoenas*, 318 F.3d at 381, 386

(affirming district court's holding that bank records in possession of attorneys were not work-

product protected because the attorneys had not demonstrated a "real, rather than speculative,

concern" that the selection and compilation of those records would "reveal counsel's thought

processes and strategies," noting that "conclusory ex parte affidavits" asserting that the subset of

materials was created "pursuant to a carefully orchestrated defense strategy" were insufficient).

Even assuming that Buyer selected the underlying information at the direction of his counsel, the

Government learned that fact only through suggestions made by counsel's briefing on the instant

motion. As counsel is well aware, the Government did not know that Buyer forwarded the

Screenshot Emails to attorneys, and so could not have learned anything about Buyer's defense

strategy from them.[8]

    *Finally*, Buyer has waived any attorney-client and work product privileges, had they

existed in the first place, over at least two of the Screenshot Emails. By not timely asserting

either privilege, Buyer's actions, and those of his prior counsel,[9] impliedly waived both

---

[8] In any event, even if the materials at issue constituted work product, which they do not, they constitute "fact work product." Fact work product protection can be overcome by a showing of "substantial need"—in other words, it is not absolute. *See In re Grand Jury Proceedings*, 219 F.3d 175, 190-91 (2d Cir. 2000).

[9] After FBI agents first approached Buyer on October 8, 2021, the Government was contacted by Andrew Goldstein, Esq., who informed the Government on October 18, 2021, that he had been retained by Buyer for purposes of the Government's investigation. Goldstein represented Buyer up through the initial conference and arraignment in this case on July 27, 2022. On August 5, 2022, current counsel entered their appearances in the case. *See* Dkt. 13-15.

privileges. From the moment the Government's investigation became overt, the Government revealed to Buyer and Buyer's counsel that it was in possession of some of the documents that Buyer now contends are privileged. In the approximately *nine* months that passed between when FBI agents first approached Buyer (on October 8, 2021) and when the Government indicted Buyer (on July 21, 2022), prior counsel never asserted that the Government had reviewed privileged materials. Buyer never made an oral assertion of privilege, let alone moved the Court for suppression or return of property under Federal Rule of Criminal Procedure 41(g). That is so despite the fact that, when the FBI approached Buyer, the agents showed him at least two of the underlying communications contained within the Screenshot Emails: the Signal text and what Buyer refers to in his motion as the "Budget Medical Text." Buyer did not assert that those communications were privileged. Nor did his prior counsel in several follow-up phone calls and conversations. In an effort to dissuade the Government from charging Buyer, prior counsel met with the Government on *four* separate occasions: in person on December 13, 2021, June 1, 2022, and June 17, 2022, and by video on July 19, 2022. Prior counsel explicitly raised and discussed the Signal text and the Budget Medical Text on December 13, 2021, including both in a written presentation and urging the Government to adopt an interpretation favorable to Buyer. The Signal text was discussed at at least one additional meeting with the Government.

"When documents are seized pursuant to a search warrant, the client has no opportunity to object before the breach of confidentiality. Consequently, after the involuntary breach, the privilege holder must take measures that are reasonably designed to obtain the return of the documents or the privilege protection will be waived." PAUL RICE, ATTORNEY-CLIENT PRIVILEGE IN THE UNITED STATES § 9:33, 208 (2021-2022 ed. Dec. 2021); *see also id.* at 9:28, 113 ("When government officials illegally search and seize confidential attorney-client

communications, . . . once the client discovers that privileged communications have been inappropriately seized . . . , the client must take reasonable measures to retrieve those communications. Failing to take all reasonable measures may result in a waiver of the privilege protection that survived the inappropriate taking."). Accordingly, courts have found a waiver of privilege where an attorney, as agent of the client, failed to timely object to disclosure or the seizure of privileged documents. *See, e.g.*, *In re Philip Services Corp. Secs. Litig.*, 98 Civ. 835 (MBM) (DF), 2005 WL 2482494, at *2 (S.D.N.Y. Oct. 7, 2005); *compare In re Parmalat Secs. Litig.*, 04 MD 16753 (LAK) (HBP), 2006 WL 3592936, at *4 (S.D.N.Y. Dec. 1, 2006); *see also United States v. de la Jara*, 973 F.2d 746 (9th Cir. 1992) (where search warrant uncovered a letter to defendant from his attorney and the letter was admitted at trial, defendant impliedly waived privilege by failing to "pursue all reasonable means of preserving the confidentiality," doing "nothing to recover the letter or protect its confidentiality during the six month interlude between its seizure and introduction into evidence"); *United States v. Ary*, 518 F.3d 775, 784-85 (10th Cir. 2008) (where Government executed search warrant and seized and reviewed materials that defendant later claimed were privileged, but the defendant waited six weeks to assert protection after reviewing the documents to so assert, defendant waived both attorney-client privilege and work-product protection). There is good reason for this waiver doctrine: where a party delays in asserting privilege (or fails to do so all together, as here), he is failing to "minimize the damage caused by the breach of confidentiality," acting contrary to the goals underlying the privilege of shielding confidences. *Id.* at 784.

Despite active engagement regarding the Government's evidence and legal theories during multiple meetings with the Government, Buyer's prior counsel never asserted or even suggested that the either the Budget Medical Text or the Signal text were privileged. As noted,

20

he also did not seek judicial intervention. Allowing the Government to continue its investigation after that point, ignorant to Buyer's claims of privilege and therefore unable to take steps to minimize any spill or avoid further taint, Buyer thereby waived both the attorney-client privilege and work-product protection.[10]

For the foregoing reasons, the Screenshot Emails are not protected by an applicable privilege, nor are the underlying attachments. Because the Government has not reviewed any privileged materials, there is no need for the Court to conduct a *Kastigar* hearing, because there is no potential "taint."

### B. The Filter Team Procedures Adequately Protected Buyer's Rights

Buyer argues, without specificity, that the Government's use of a filter team in this case was "wholly inadequate" and that the Court should order a hearing to "determine the extent of the taint." (Br. 17). But for the reasons explained above, the Screenshot Emails are not privileged. And beyond that, Buyer, who has the documents the Government has identified as responsive to any of its search warrants, as well as the full set of seized materials, has not identified any particular communications that the Government has seen that he contends are privileged. The Court should not order a hearing on such baseless and speculative accusations.

1.  Applicable Law

"The use of a filter team is a common procedure in this District and has been deemed adequate in numerous cases to protect attorney-client communications." In re Search Warrants

---

[10]  The Court should also consider this background in connection with current counsel's suggestion that the Government somehow engaged in malfeasance or intentionally intruded on the attorney-client privilege. To the contrary, the Government sat with counsel and discussed the Screenshot Emails on more than one occasion. With no indication that Buyer viewed this material as privileged, the Government's failure to treat it as such could not have been deliberate.

Executed on Apr. 28, 2021, 21 Misc. 425 (JPO), 2021 WL 2188150, at *2 (S.D.N.Y. May 28,

2021) (citing *United States v. Blakstad*, 19 Cr. 486 (ER), 2020 WL 5992347, *8 (S.D.N.Y. Oct.

9, 2020); *United States v. Ceglia*, 12 Cr. 876 (VSB), 2015 WL 1499194, *1 (S.D.N.Y. Mar. 30,

2015)); *see also, e.g.*, *United States v. Yousef*, 327 F.3d 56, 168 (2d Cir. 2003) ("[T]he

Government established an effective firewall to prevent disclosures to the Government's trial

attorneys of trial strategies or confidential communications between [the defendants] and their

attorneys."), *overruled on other grounds by Montejo v. Louisiana*, 556 U.S. 778.

      Inadvertent disclosure of potentially privileged information to the prosecution team is not

alone a basis for relief. *See United States v. Lumiere*, 16 Cr. 483 (JSR), 2016 WL 7188149, at *6

(S.D.N.Y. Nov. 29, 2016) (after-the-fact notice of potentially privileged documents did not

render an earlier search invalid); *United States v. Dupree*, 781 F. Supp. 2d 115, 163 (E.D.N.Y.

2011) ("the mere fact that the government obtained privileged information does not mean it

violated defendants' Sixth Amendment rights"). In order to be entitled to a hearing "to determine

whether the prosecution was tainted by exposure to privileged information . . . [d]efendants have

the burden of showing a 'factual relationship' between the privileged information and the

prosecution." *United States v. Sharma*, 18 Cr. 340 (LGS), 2019 WL 3802223, at *5 (S.D.N.Y.

Aug. 13, 2019) (denying a hearing where potentially privileged search warrant returns were

inadvertently provided to the trial team; collecting cases). In other words, a defendant is required

to show that privileged materials have an "apparent bearing on what are likely to be the issues in

the case" and would "give the Government [an] unfair 'tactical advantage' and insight into

Defendants' 'means of defeating the charges.'" *Id*. It is the defendant's burden to "show 'a

distinct, as opposed to speculative, possibility of taint.'" *United States v. Hoey*, 15 Cr. 229

(PAE), 2016 WL 270871, at *4 (S.D.N.Y. Jan. 21, 2016), *aff'd*, 725 F. App'x 58, 61 (2d Cir.

2018) (quoting *United States v. Helmsley*, 726 F. Supp. 929, 933 (S.D.N.Y. 1989)). "Failure to show the requisite factual relationship is sufficient to end the inquiry." *Sharma*, 2019 WL 3802223, at *5 (quoting *United States v. Blau*, 159 F.3d 68, 72 (2d Cir. 1998)).

Where certain privileged material passes to the prosecution team, "[t]he general remedy for violation of the attorney-client privilege is to suppress introduction of the privileged information at trial,' not to order wholesale suppression" of other, non-privileged materials. *Lumiere*, 2016 WL 7188149, at *6 (quoting *United States v. SDI Future Health, Inc.*, 464 F. Supp. 2d 1027, 1047 (D. Nev. 2006)); *see also Schulte*, 2019 WL 5287994, at *2 (same); *United States v. Patel*, 16 Cr. 798 (KBF), 2017 WL 3394607, at *6 (S.D.N.Y. Aug. 8, 2017) (same).

2.  Discussion

The Government used a filter team in this case as soon as it became apparent that Buyer was communicating with attorneys. Prior to that, the Government had no reason to believe that Buyer was represented. The SEC's and the Government's respective investigations were entirely covert. And although Buyer had been interviewed by counsel for Guidehouse in connection with a FINRA investigation as of late 2019, Buyer had not claimed to be represented by counsel during that interview. Indeed, when the FBI approached Buyer in October 2021, Buyer did not have counsel; only ten days later did prior counsel inform the Government that he was "coming in to represent Steve Buyer." Accordingly, there was no reason at any point until the Government began its review of search warrant returns for the Government to suspect that Buyer was represented by counsel.

As the Government voluntarily disclosed to Buyer by letter dated October 10, 2022, when the prosecution team began reviewing search warrant returns, one member of the prosecution team ("the AUSA") came across an email that appeared to involve a lawyer. *See*

Alonso Decl. Ex. J at 1-2. The AUSA stopped reviewing the email and alerted the rest of the

prosecution team, all of whom stopped their review. *Id.* The filter team then instituted procedures

to segregate any potentially privileged materials from the prosecution team, and did so for all

search warrant returns reviewed thereafter for the rest of the investigation. *Id.* at 2. The AUSA

does not recall the details or substance of the email. *Id.*

Buyer has made no showing that the inadvertent disclosure of that email tainted the

prosecution team. *See Sharma*, 2019 WL 3802223, at *4-5. Nor could it have, since the AUSA

does not recall the details or substance thereof. A simple, brief exposure to a potentially

privileged email does not provide a basis for relief.[11] *See id.*; *Lumiere*, 2016 WL 7188149, at *6;

*Dupree*, 781 F. Supp. 2d at 163. At most, the appropriate relief would be for the Court to

suppress introduction of that particular email at trial—an email which the Government, totally

unaware of its contents, does not even seek to use. *Lumiere*, 2016 WL 7188149, at *6; *see also*

*Schulte*, 2019 WL 5287994, at *2; *Patel*, 2017 WL 3394607, at *6.

Beyond that email, and the Screenshot Emails that, as explained above, are not

privileged, Buyer cites nothing privileged that "made it through the filter team." (Br. 17). The

Government has invited defense counsel on multiple occasions to inform the Government if

there are any communcations that the Government reviewed that counsel asserts are privileged,

now that Buyer knows precisely what the Government has reviewed from the discovery. Counsel

has identified none.

Accordingly, there is no basis for the Court to order a hearing to address whether the

---

[11] It is entirely possible that the email in question was not even privileged, if it happened to be
one of the Attorney Screenshot Emails which, for the reasons explained above, are not
privileged.

prosecution team has been tainted. Buyer cites not a single instance in which a court has done so. (*See* Br. 17-18). And he has not shown any "distinct, as opposed to speculative, possibility of taint." *Hoey*, 2016 WL 270871, at *4.

### C. There Is No Basis For Disclosure of the Grand Jury Minutes

Equally meritless is Buyer's motion for the Court to order disclosure of the grand jury minutes or to review those minutes *in camera*.

Grand jury proceedings carry a presumption of regularity, and are secret and closed. *See In re Grand Jury Subpoena*, 103 F.3d 234, 239 (2d Cir. 1996); *see also* Fed. R. Crim. P. 6(e). Although a defendant may seek the disclosure of grand jury minutes where the defendant "show[s] that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury," Fed. R. Crim. P. 6(e)(3)(E)(ii), the strong presumption of grand jury secrecy and regularity can be overcome only by a defendant's showing of "particularized need that outweighs the need for secrecy." *United States v. Moten*, 582 F.2d 654, 662 (2d Cir. 1978). "A review of grand jury minutes should not be permitted without concrete allegations of Government misconduct." *See United States v. Leung*, 40 F.3d 577, 582 (2d Cir. 1994).

A defendant seeking to overcome the strong presumption of regularity faces a high bar. *See United States v. Silver*, 103 F. Supp. 3d 370, 376, 381 (S.D.N.Y. 2015). Such a showing requires more than mere "speculation and surmise"; rather, the defendant must present "some grossly prejudicial irregularity or some other particularized need or compelling necessity." *United States v. Gibson*, 175 F. Supp. 2d 532, 534 (S.D.N.Y. 2001).

Buyer provides no such allegations here. He argues that the Court should order the disclosure solely on the ground that Buyer's attorney-client and work product privileges were violated. (Br. 18-19). But they were not, undermining the entire basis for Buyer's motion. The

motion should be denied.

### III.   **The Court Should Deny Buyer's Motion for a *Franks* Hearing**

Buyer seeks a *Franks* hearing on the basis that certain warrant affidavits contained the representation that Buyer told Guidehouse counsel that he purchased Navigant shares on the basis of Zacks research reports *received from* his son, when in fact Buyer sent the Zacks research *to* his son. (Br. 19). Because the affiant's representation as to what he learned from the SEC about Buyer's statement was not false, much less intentionally so, and because the distinction between the affiant's representation and what in fact occurred was wholly immaterial to any finding of probable cause, Buyer's motion should be denied. Buyer's argument on the basis of purported omissions related to the Government's review of allegedly privileged communications (*see* Br. 25-26) fares no better, because the communications at issue were not privileged and, in any event, there is no allegation that the affiant knew that Buyer was represented by counsel.

A defendant seeking to challenge the validity of a warrant on the basis of alleged errors or inaccuracies in the application faces a high bar. *See generally Franks v. Delaware*, 438 U.S. 154, 155-156 (1978). Pursuant to *Franks*, evidence will not be suppressed unless both "(1) the claimed inaccuracies or omissions are the result of the affiant's deliberate falsehood or reckless disregard for the truth; and (2) the alleged falsehoods or omissions were necessary to the [issuing] judge's probable cause finding." *United States v. Canfield*, 212 F.3d 713, 717-718 (2d Cir. 2000); *see also United States v. Martin*, 426 F.3d 68, 73 (2d Cir. 2005) (defendant must show that "the affidavit contained 'a false statement knowingly and intentionally, or with reckless disregard for the truth.'" (quoting *Franks*, 438 U.S. at 156)).

The first *Franks* prong, "which looks to the mental states of mind of government officials, is said to be a 'subjective' test rather than an 'objective' one." *United States v.*

*Rajaratnam*, 719 F.3d 139, 153-54 (2d Cir. 2013) (reversing suppression order "because the District Court failed to consider the actual states of mind of the wiretap applicants"). To demonstrate the existence of intentional misrepresentations or omissions, the defendant must present the reviewing court with "credible and probative evidence" that any misrepresentations and omissions were "'designed to mislead'" or were "'made in reckless disregard of whether [they] would mislead.'" *Id.* at 154.

With respect to the second *Franks* prong, "[t]o determine if misrepresentations or omissions are material, a court corrects the errors and then resolves de novo whether the hypothetical corrected affidavit still establishes probable cause." *United States v. Lahey*, 967 F. Supp. 2d 698, 711 (S.D.N.Y. 2013). "If the corrected affidavit supports probable cause, the inaccuracies were not material to the probable cause determination and suppression is inappropriate." *Canfield*, 212 F.3d at 718. In other words, "[t]he ultimate inquiry is whether, after putting aside erroneous information and material omissions, there remains a residue of independent and lawful information sufficient to support probable cause." *Id.*

Further, a defendant is not entitled to a hearing on the truthfulness of a supporting affidavit. Rather, a defendant must make a "*substantial preliminary showing* that a deliberate falsehood or statement made with reckless disregard for the truth was included in the warrant affidavit and the statement was necessary to the judge's finding of probable cause." *United States v. Falso*, 544 F.3d 110, 125 (2d Cir. 2008) (emphasis added). Thus, "[t]o mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. . . . and those allegations must be accompanied by an offer of proof." *Franks*, 438 U.S. at 171-72. The burden to obtain a *Franks* hearing is accordingly a heavy one, and such hearings are thus exceedingly rare. *See United States v.*

27

*Swanson*, 210 F.3d 788, 790 (7th Cir. 2000); *United States v. Brown*, 744 F. Supp. 558, 567 (S.D.N.Y. 1990) ("A defendant seeking . . . a *Franks* hearing bears a substantial burden.").

Buyer's motion fails in the first instance because it does not identify, and certainly cannot make a substantial preliminary showing of, any false statements in the warrant affidavits. Indeed, his motion makes only the barest of attempts to satisfy this requirement and rests on the allegation that the affiant's sworn statements are false because they rest on inadmissible, unreliable hearsay. But, the affiant's sworn statement was that "*Based on my conversations with the SEC*, I know that … sometime after October 4, 2019 – Stephen Buyer was interviewed by counsel for Guidehouse. During the interview, Stephen Buyer said that his trading in Navigant was based on two Zacks Investment Research Reports provided by his son, Ryan Buyer." (First Warrant at 22). Accordingly, and as Buyer appears to acknowledge, this statement is true: the affiant understood (albeit inaccurately) from the SEC that Buyer told Guidehouse counsel that he had traded in Navigant based on Zacks research provided by his son. Because the affiant in fact disclosed to the Magistrate Judge who authorized the warrant the layers of telephone that Buyer argues rendered the statement unreliable, there was no false statement that might give rise to a *Franks* issue. The Magistrate Judge was aware of the source of that information.

Moreover, Buyer does not even attempt to argue that the allegedly inaccurate statement was intentional or designed to mislead, rather than the result of an unfortunate (but disclosed) game of telephone. And for good reason, because the claimed inaccuracy is not the type of misstatement that could give rise to an inference of a reckless or intentional attempt to mislead. Indeed, the distinction between the events recounted by the affiant (that Buyer said he received Zacks research *from* his son) and the purported actual course of events (that Buyer conducted Zacks research and sent the research *to* his son) is a distinction without a difference. Under either

scenario, when Buyer was questioned by Guidehouse counsel about his Navigant trades, Buyer disclaimed trading on the basis of MNPI, intentionally omitted any reference to conversations with Guidehouse insiders, and misdirected Guidehouse counsel to Zacks research reports to provide a legitimate basis for his trades. The affiant had nothing to gain by describing the Zacks research as coming from Buyer's son, as opposed to Buyer sending the research to his son, because both versions of events told the same, false narrative in an effort to deceive Guidehouse's lawyers. Indeed, the statement made by Buyer that he received the Zacks reports from his son is potentially exculpatory information, undercutting probable cause had the Magistate Judge taken it at face value. Thus, any claim that the affiant's inaccurate statement was designed to mislead the Magistrate Judge is wholly without merit.

Buyer's motion fails on the second *Franks* prong as well. Even *assuming arguendo* that the affiant's statement was false, the statement could not possibly have been material to the Magistrate Judge's determination of probable cause to issue the warrants. As a threshold matter, if the Magistrate Judge were to strip away any statements in the warrant affidavits about Zacks research, the Judge would be left with a search warrant demonstrating that Buyer had a conversation with a Guidehouse employee who communicated closely with another employee who was apprised of the potential acquisition, that Buyer purchased shares of Navigant within 24 hours of speaking with the Guidehouse employee, and that he purchased thousands of shares of Navigant stock against several brokerage accounts over the course of the next six weeks, resulting in remarkably timely and profitable trades. That information alone provided sufficient probable cause for the warrants to issue. And if the affidavits were corrected by replacing the representation that Buyer received the Zacks research with the representation that Buyer claimed *he* sent the Zacks research, that change would only strengthen the probable cause finding,

29

because it would show at least some admission by Buyer that he was involved in attempting to deduce a potential merger. In other words, the corrected affidavit Buyer posits would have been more, not less, persuasive.

As a result, Buyer has failed to make the necessary "substantial preliminary showing" entitling him to a *Franks* hearing related to the warrants' inclusion of Buyer's statements to Guidehouse counsel.[12]  Accordingly, no hearing on the pending motion is required and suppression is unwarranted.[13]

## IV.   **The Court Should Deny Buyer's *Brady* Motion**

Buyer claims that the Government is obligated to review the SEC's files for *Brady* material. But the SEC conducted a separate, parallel investigation and is thus not a part of the prosecution team for *Brady* purposes. *See, e.g.*, *United States v. Rigas*, 02 Cr. 1236 (LBS), 2008 WL 144824, at *2 (S.D.N.Y. Jan. 15, 2008) (parallel civil and criminal investigations were not "joint"); *SEC v. Stanard*, 06 Civ. 7736 (GEL), 2007 WL 1834709, at *3 (S.D.N.Y. June 26, 2007) (FBI and SEC did not conduct a joint investigation despite joint interviews). Nonetheless, as the Government informed the defense by letter (*see* Alonso Decl. Ex. B), the Government has requested to review the SEC's file for material that would constitute *Brady* or *Giglio* material in the hands of the Government, and the Government intends to produce any such material within the time frame required by the Court's individual rules. This motion should therefore be denied.

---

[12]  Because the affiant's reference to the Signal Screenshot Email and what Buyer refers to as "the Alicia Text Screenshot" did not in fact include any privileged communications, and because the affiant was not aware of any facts giving rise to a claim of privilege (including even that Buyer was represented), *see* Section II, the omission of any reference to the allegedly privileged nature of the communications cannot provide the basis for a *Franks* hearing. (*See* Br. 25-26).

[13]  Because Buyer has not articulated any basis for suppression, and because the affiant relied on the warrants in good faith, the exclusionary rule and the fruit of the poisonous tree doctrine do not apply here. *See Wong Sun v. United States*, 371 U.S. 471, 484-85 (1963).

The defense also asks the Court to order the Government to identify certain information within the already-produced discovery that it claims would constitute *Brady*. (Br. 29-30). But the Second Circuit has rejected precisely the argument Buyer presses here. *See United States v. Ohle* ("*Ohle II*"), 441 F. App'x 798, 804 (2d Cir. 2011). The district court in *Ohle* had held that "as a general rule, the Government is under no duty to direct a defendant to exculpatory evidence within a larger mass of disclosed evidence," and that although "the Government may not properly conceal exculpatory evidence from a defendant, [*Brady*] does not place any burden upon the Government to conduct a defendant's investigation or assist in the presentation of the defense's case." *United States v. Ohle* ("*Ohle I*"), 08 Cr. 1109 (JSR), 2011 WL 651849, at *4 (S.D.N.Y. Feb. 7, 2011). The Second Circuit agreed and cited the district court's "thoughtful and meticulous opinion." *Ohle II*, 441 F. App'x at 804. As in *Ohle I*, other courts in this District recognize that "[i]n the *Brady* context, the Government is under no duty to direct a defendant to exculpatory evidence within a larger mass of disclosed evidence, even when that larger mass is enormous[.]" *United States v. Healey*, 860 F. Supp. 2d 262, 269 (S.D.N.Y. 2012); *United States v. Parnas*, 19 Cr. 725 (JPO), 2021 WL 2981567, at *6 (S.D.N.Y. July 14, 2021) (same); *see also, e.g.*, *United States v. Rubin/Chambers, Dunhill Ins. Servs.*, 825 F. Supp. 2d 451, 457 (S.D.N.Y. 2011) ("The Government is under no general obligation to identify or sort *Brady* material within even an extremely voluminous disclosure[.]"). Buyer does not cite a single case in this District that required itemization of *Brady* material within discovery.

Instead, Buyer relies principally on *United States v. Gil*, 297 F.3d 93 (2d Cir. 2002), but there the relevant *Brady* material was deemed suppressed because it was produced "[o]ne or two business days before trial" within a large production, *id.* at 96, and the defense was therefore "not in a position to read it, identify its usefulness, and use it," *id.* at 106. Unlike *Gil*, the claim

here does not involve a "disclosure on the eve of trial," *id.*, and the defense has not alleged that the Government has taken efforts to conceal evidence favorable to the defense within discovery. Far from it. The Government has produced discovery in an electronic and searchable format, accompanied by indices, as well as witness statements with information potentially favorable to the defense. This discovery has been produced well in advance of trial, with time for the defense to review it and craft a defense strategy. On these facts, the defense motion should plainly be rejected. *Rubin/Chambers, Dunhill*, 825 F. Supp. 2d at 455 ("[a]bsent prosecutorial misconduct—bad faith or deliberate efforts to knowingly hide *Brady* material," even "voluminous" disclosures will be held to satisfy *Brady*).

## V.     The Court Should Deny Buyer's Motion for a Bill of Particulars

Buyer seeks to compel the Government to specify the inside information he is alleged to have learned, its source, and the timing of any such disclosures. (Br. 31-32). This motion should be denied as "an impermissible attempt to compel the Government to provide the evidentiary details of its case." *United States v. Rittweger*, 259 F. Supp. 2d 275, 292-93 (S.D.N.Y. 2003).

A bill of particulars is required "only where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused." *United States v. Walsh*, 194 F.3d 37, 47 (2d Cir. 1999). That is not the case here. The 20-page indictment, as supplemented by the searchable Rule 16 discovery and additional voluntary disclosures made by the Government, provides Buyer with more than enough notice. *See United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987) (court should consider the text of the Indictment, as well as discovery and other information supplied to the defendant).

The Indictment itself alleges that Buyer misappropriated MNPI that he "learned as a consultant" for Guidehouse and "through his consulting work for T-Mobile" "in connection with

. . . corporate mergers" involving Guidehouse/Navigant and T-Mobile/Sprint. (Indictment

("Ind.") ¶¶ 2, 8). Buyer argues that the Indictment is "devoid of details of *what* information

exactly he is supposed to have 'misappropriated,' when, and from whom." (Br. 31). But the

"wheres, whens and with whoms" are precisely the details that courts have deemed "beyond the

scope of a bill of particulars." *United States v. Mitlof*, 165 F. Supp. 2d 558, 569 (S.D.N.Y. 2001).

Regardless, the Indictment does specify this information, including the narrow timeframes of the

relevant trades (March 29-April 5, 2018 and June 12-August 2, 2019, Ind. ¶¶ 8, 14-20, 24-26, 32-

35), the nature of the information (renewed merger discussions in the case of Sprint/T-Mobile,

Ind. ¶¶ 12-13 and Guidehouse's potential acquisition in the case of Guidehouse/Navigant, Ind. ¶¶

31-32 ), and the sources of that information (a T-Mobile Government Affairs executive and a

salesperson at Guidehouse, Ind. ¶¶ 12-14, 31-32). While more information might be considered

"helpful," the "ultimate test must be whether the information sought is necessary," *Mitlof*, 165 F.

Supp. 2d at 569, and the allegations in the Indictment are more than sufficient to advise Buyer of

the nature of the charged scheme. *See United States v. D'Amico*, 734 F. Supp. 2d 321, 335

(S.D.N.Y. 2010) ("'A bill of particulars is not a general investigative tool, a discovery device or

a means to compel the government to disclose evidence or witnesses to be offered prior to

trial.'"); *United States v. Bellomo*, 263 F. Supp. 2d 561, 580 (E.D.N.Y. 2003) ("A bill of

particulars is not designed to . . . restrict the government's evidence prior to trial; assist the

defendant's investigation; obtain the precise way in which the government intends to prove its

case; interpret its evidence for the defendant, or disclose its legal theory.").

Courts in this District therefore routinely deny motions like Buyer's. *See, e.g.*, *United*

*States v. Walters*, 16 Cr. 338 (PKC) (Dkt. 51 at 27) (granting defense motion to identify all

allegedly unlawful trades but denying motion to particularize the inside information Walters

allegedly received); *United States v. Chow*, 17 Cr. 667 (GHW) (Dkt. 45 at 1) (similar); *United States v. Wey*, 15 Cr. 611 (AJN), 2017 WL 237651, at *19 (S.D.N.Y. Jan. 18, 2017) (disclosure of "trade-level detail" was "the very type of evidentiary minutiae that is not appropriate in a bill of particulars"); *United States v. Tuzman*, 301 F. Supp. 3d 430, 452-53 (S.D.N.Y. 2017) (denying request for bill of particulars seeking "particularized trade information"); *United States v. Trippe*, 171 F. Supp. 2d 230, 240 (S.D.N.Y. 2001) (stock fraud case where indictment was 15-pages long and substantial discovery had been provided). In *United States v. Nachamie*, 91 F. Supp. 2d 565, 571 (S.D.N.Y. 2000), on which Buyer relies (Br. 34), the Government failed to identify which of the 200,000 pages in discovery it "intend[ed] to rely on in its case-in-chief at trial." But the Government here intends to produce an exhibit list before trial.

This case is also unlike those few cases identified by Buyer where the district court ordered the Government to disclose certain particulars. (Br. 34). Among other things, those cases involved indictments with significantly more charges and/or more trading activity to parse than that at issue here.[14] By contrast, the Indictment here contains only four counts and specifies the trades at issue (Ind. ¶¶ 41, 45 (charts of relevant trades)), the providers of the MNPI, and the subject of the MNPI. As Judge Swain explained in rejecting an argument like Buyer's: "specificity as to the substance of tipping communications may sometimes be necessary in complex insider trading cases involving multiple alleged conspirators and communications, large numbers of companies and transactions and extended time periods . . . [but] no such challenge of

---

[14] For example, in *United States v. Contorinis*, 09 Cr. 1083 (RJS), slip op. at 1-2 (S.D.N.Y. May 5, 2010), the charges spanned a period of over two years where hundreds of trades in multiple stocks took place, and in *United States v. Nacchio*, 05 Cr. 545 (EWN), 2006 WL 2475282, at *6 (D. Colo. Aug. 25, 2006), the Indictment had forty-two counts and allegations of using material nonpublic information were not tied to any particular count.

complexity is presented here." *United States v. Stewart*, 15 Cr. 287 (LTS) (S.D.N.Y. 2016) (Dkt. 64 at 22). So too here. Because the details provided by the Government go beyond what the law requires, Buyer's motion for a bill of particulars should be denied.

## CONCLUSION

For the reasons set forth above, Buyer's motions should be denied.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York

By: ___/s/ Elizabeth Hanft_____
  Kiersten A. Fletcher
  Elizabeth Hanft
  Danielle R. Sassoon
  Assistant United States Attorneys
  (212) 637-2238/2334/1115

Dated: November 16, 2022
  New York, New York

35