

Daniel R. Alonso
Partner
1133 Avenue of the Americas
Suite 3100
New York, NY  10036
T (212) 600-2340
dalonso@buckleyfirm.com

December 23, 2022

VIA ECF ONLY

The Honorable Richard M. Berman
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

> Application granted.  Counsel may seek subpoenas consistent with those outlined in this letter in accordance with Fed. R. Crim. P. 17.
>
> SO ORDERED:
> Date: 12/28/22
> Richard M. Berman, U.S.D.J.

Re:   United States v. Buyer, 22 Cr. 397 (RMB)

Dear Judge Berman:

Pursuant to Fed. R. Crim. P. 17(c), I write to respectfully request that the Court order subpoenas returnable in advance of trial to (1) Trump National Doral Golf Club ("Trump Doral"), (2) T-Mobile US, Inc. ("T-Mobile"), and (3) Guidehouse LLP ("Guidehouse").[1] Each proposed set of items sought is specified below, and has been narrowly tailored to seek only specific, relevant materials, calculated to cause as little disruption as possible to the witness entities to which they would be addressed.[2]

By way of background, Mr. Buyer is charged with two unrelated schemes involving allegations of misappropriation of material, non-public information ("MNPI")—one from T-Mobile and one from Guidehouse. The main issue in each is whether MNPI was imparted to Mr. Buyer before he traded in the stock of Sprint and Navigant, respectively. The defense will contend that Mr. Buyer was not in possession of any such MNPI, and that the government's wholly circumstantial case is insufficient to establish that he was. Although the government has declined our request for a bill of particulars, we assume for the sake of this motion that the government is alleging that MNPI as to Guidhouse/Navigant was imparted by the person referred to as "Salesperson-1" in the Indictment, and the MNPI as to T-Mobile/Sprint was imparted by the person referred to as "Executive-1." (The parties are aware of the true identity of these individuals, and the subpoenas will specify their names.)

---

[1] We are filing this request on notice by letter motion at the direction of chambers. To the extent that future requests might implicate defense trial strategy, we reserve our right to request that the Court consider them *ex parte*. *See United States v. Ray,* 337 F.R.D. 561, 571 (S.D.N.Y. 2020) (Liman, J.) (describing the rationale for permitting *ex parte* defense subpoenas under Rule 17(c)).

[2] The present request is separate from Mr. Buyer's pending *Brady* motion currently under consideration (ECF No. 42). There, we are seeking a specific recording of Salesperson-1's interview with Guidehouse's outside counsel which is currently in the possession of the government's filter team. As we requested at last week's oral argument, if the Court denies that request, we have asked for a Rule 17(c) subpoena seeking the recording from Guidehouse or its lawyers.

The Honorable Richard M. Berman
December 23, 2022
Page 2

With respect to the Guidehouse/Navigant counts, the *Brady* material the government has provided indicates that Salesperson-1 not only did not tell Mr. Buyer about the potential acquisition of Navigant by Guidehouse, but also that Salesperson-1 did not himself know. With respect to T-Mobile/Sprint, the *Brady* material thus far produced indicates that Executive-1's recollection is far from definitive as to when he believes he told Mr. Buyer about the renewed merger discussions, and that much of Executive-1's testimony will center around who was part of the "small, trusted group of lobbyists" mentioned in the indictment as having been mobilized by T-Mobile's government affairs group, of which Executive-1 was a member (ECF No. 1 ¶ 12 ("Ind.")). As a result, it will be critical at trial to establish who was part of this "small group" and when they were "read in" to the possibility of a merger. Finally, because the indictment juxtaposes Mr. Buyer's game of golf with Executive-1 on March 28, 2018 and alleges that he purchased Navigant stock the next day (Ind. ¶¶ 14-15), it will be important to establish who was present at the golf outing.

The materials we are seeking from Guidehouse and T-Mobile seek to establish these specific, relevant, and indeed central facts. The discovery information provided thus far by the government provides insufficient detail, which is why we need the information requested below. We address each proposed subpoena in turn, including a brief discussion of relevance.

**(1) Trump Doral**

- Business records containing the names of the golfers who played with member [Executive-1, to be named in the subpoena] on March 28, 2018.

The Indictment alleges that Mr. Buyer played golf with "Executive-1" on March 28, 2018, and strongly implies that MNPI was imparted to Mr. Buyer on that day. Ind. ¶¶ 14-15. The records at issue would demonstrate what the information the government has thus far provided does not: the identity of additional players, who could be expected to deliver relevant testimony. We have been unable to obtain this information either from the government, and Mr. Buyer does not have any records that would confirm this information.

**(2) T-Mobile**

- Documents, including communication records, identifying all non-T-Mobile personnel (excluding lawyers engaged as outside counsel), who were informed of the renewed merger discussions between T-Mobile and Sprint Corporation ("Sprint") that took place in 2018, including records containing the dates of such notifications (colloquially referred to as "being read in").
- Documents, including communication records, which demonstrate, reveal, or suggest that Stephen Buyer was "read in" to the T-Mobile/Sprint discussions at any time before April 2, 2018. If none exist, please certify that none exist.
- Documents memorializing interviews with, or communications by, Executive-1 regarding Stephen Buyer's involvement, if any, with any activity or discussions relating to the T-Mobile/Sprint merger discussions and/or transaction in 2018.

As described above, the key issue in the T-Mobile/Sprint counts is whether Executive-1 imparted MNPI on Mr. Buyer in advance of when Mr. Buyer allegedly traded in Sprint. With the T-Mobile counts, that question is wrapped up in the issue of who was part of a "core group" of lobbyists

The Honorable Richard M. Berman
December 23, 2022
Page 3

and consultants. The first two items are crucial to answering this question as well as the question of *when* T-Mobile documented, if ever, that Mr. Buyer was "read in." Finally, because Executive-1's recollection as relayed to the government is equivocal, it will be important to have any records of interviews with him closer to the time of the transactions, for the same reasons that we are separately seeking the Guidehouse recording.

### (3) Guidehouse

- Documents, including communication records, which demonstrate, reveal, or suggest that Stephen Buyer was informed of any discussions or communications related to the potential acquisition of Navigant Consulting Inc. ("Navigant") by Guidehouse at any time before June 13, 2019, including records containing the dates of such notifications (colloquially referred to as being "read in."). If none exist, please certify that none exist.
- Documents memorializing interviews with, or communications by, Salesperson-1 regarding Stephen Buyer's involvement, if any, with any activity or discussions relating to the Guidehouse/Navigant acquisition discussions and/or transaction that was ultimately announced on or about August 2, 2019.
- Any and all notes of the interview with Stephen Buyer conducted by outside counsel for Guidehouse on or about November 2, 2019.
- Any and all insider trading policies applicable during the period between on or about June 1, 2019 and on or about August 3, 2019.

The first set of items is relevant for the same reason as the T-Mobile requests, although this one is narrowly tailored to Mr. Buyer because the same "core group" issue does not appear to be present with respect to Guidehouse. Salesperson-1's statements within his company, including contemporaneous statements, are important for the same reason the recording is. Additionally, the company insider trading policies are relevant to the question of whether the information allegedly imparted was confidential, material, and non-public, all of which are elements of the crimes alleged.

Finally, Mr. Buyer was interviewed by counsel for Guidehouse on November 2, 2019 (Ind. ¶ 38), and it appears from the government's discovery materials that the government has only been told orally of the contents of that interview. It is evident that the government seeks to introduce Mr. Buyer's statements, and indeed has alleged some of the contents of that interview in the Indictment itself. *See e.g.,* Ind. ¶ 32. As a result, in order to properly test that information before the jury, it will be crucial to have the contemporaneous notes of the interviewers.

\* \* \* \*

In sum, these requests are narrowly tailored to only a handful of relevant issues left unanswered by the government's productions. In the interest of not unduly burdening the entities to be su-

The Honorable Richard M. Berman
December 23, 2022
Page 4

bpoenaed, the requests are further limited to only materials each business is likely to have in its records. We therefore respectfully ask the Court to order the subpoenas outlined in this letter, which we will submit to chambers as the Court directs.

      Thank you for your consideration.

                                                Respectfully submitted,

                                                /s/ *Daniel R. Alonso*
                                                Daniel R. Alonso

                                                Tel: (212) 600-2340
                                                dalonso@buckleyfirm.com

cc:      All counsel (by ECF)