UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
UNITED STATES OF AMERICA,                            :
                                                     :
                              Government,            :          22 CR. 397 (RMB)
                                                     :
            - against -                              :          **ORDER**
                                                     :
STEPHEN BUYER,                                       :
                              Defendant.             :
-------------------------------------------------------------------x

Having reviewed the record herein, including (1) Defendant's submissions, dated October

21, 2022 and November 23, 2022 ("Defense Motions"); (2) the Government's opposition, dated

November 16, 2022 ("Government Opposition"); (3) Defendant's *in camera* submissions, received

on October 21, 2022 and November 23, 2022 ("Defense *In Camera* Submissions"); (4) the

Government's *in camera* submission, dated November 16, 2022; and (5) the transcript of oral

argument conducted on December 14, 2022 ("12/14/22 Transcript"), **the Court respectfully**

**denies Defendant's motions.**[1]

### (1) <u>Defense motion to sever Counts 1 and 2 from Counts 3 and 4 of the Indictment</u>

Joinder (not severance) is appropriate where, as here, the counts "are of the same or similar

character." Fed. R. Crim. P. 8(a); *see also United States v. Griffin*, 811 F. App'x 683, 685 (2d Cir.

2020) (quoting *United States v. Rivera*, 546 F.3d 245, 253 (2d Cir. 2008) ("'Similar' charges

include those that are 'somewhat alike,' or those 'having a general likeness' to each other.")

(internal quotation marks omitted); *see also* 12/14/22 Tr. at 9:25–10:2. Counts 1 through 4 of the

Indictment are similar in that they all involve the Defendant's alleged misappropriation of

information which he obtained through his consulting company and which involve the purchase

---

[1] **Any issues or arguments raised by the parties but not specifically addressed in this Order have been considered by the Court and rejected.**

and sale of securities. *See United States v. Gordon*, 655 F.2d 478, 484–85 (2d Cir. 1981) (joinder of counts involving four different fraud victims was proper because for each of the counts, defendant "allegedly misused his particular position to accomplish his fraudulent purposes" and made investment promises that "were similar in nature").

Moreover, the Court perceives no prejudice to Defendant Buyer, much less any "prejudice . . . [that] is sufficiently severe." *See United States v. Guttenberg*, 2007 WL 4115810, at \*8 (S.D.N.Y. Nov. 14, 2007). "[J]uries are not only able to 'compartmentalize' [evidence] as required, but do it with care and, frequently, visible results in the form of verdicts that distinguish among" counts. *United States v. Pinto-Thomaz*, 2019 WL 1460613, at \*4 (S.D.N.Y. Jan. 15, 2019); *see also United States v. Snype*, 441 F.3d 119, 129 (2d Cir. 2006).

### (2) <u>Defense motion to suppress certain material, to hold a "taint" hearing, and to obtain grand jury minutes</u>

The Court finds that the screenshots that Defendant Buyer took of (preexisting) text messages and emailed to himself ("Screenshot Emails") are not privileged. "The attorney-client privilege protects communications (1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal advice." *United States v. Mejia*, 655 F.3d 126, 132 (2d Cir. 2011) (citation omitted). The text messages contained in the Screenshot Emails are communications that occurred before Defendant engaged counsel and are not "between" Defendant Buyer and his attorneys. *See* Defense *In Camera* Submissions, Buyer Decl., dated Oct. 20, 2022, at ¶¶ 2, 4. The text messages shown in the Screenshot Emails are not "confidential communication[s] from a client to the client's lawyer [for] the predominate purpose of . . . seeking legal advice." *Valassis Commc'ns, Inc. v. News Corp.*, 2018 WL 4489285, at \*2 (S.D.N.Y. Sept. 19, 2018). And, sending preexisting documents to counsel does not confer attorney-client privilege. *See United States v. Correia*, 468 F. Supp. 3d

2

618, 622 (S.D.N.Y. 2020) ("[T]he mere transmittal of non-privileged documents [to an attorney] is not a privileged communication." (internal quotation marks and citation omitted)); *see also News Corp.*, 2018 WL 4489285, at \*2 ("The attorney-client privilege does not extend to preexisting documents that a client sends to the client's lawyer." (citation omitted)); *Correia*, 468 F. Supp. 3d at 623–24.

For similar reasons, the text messages contained in the Screenshot Emails are not protected as attorney work product. *Mercator Corp. v. United States (In re Grand Jury Subpoenas Dated Mar. 19, 2002 & Aug. 2, 2002)*, 318 F.3d 379, 383 (2d Cir. 2003) ("The attorney work product doctrine . . . provides qualified protection for materials prepared by or at the behest of counsel in anticipation of litigation or for trial."). Defendant "has advanced no argument that any of the documents were created in preparation for his defense, only that he selected relevant documents to send to his counsel." *Correia*, 468 F. Supp. 3d at 624.

There is no need for a taint hearing based upon the Government's use of the Screenshot Emails. The Court also rejects Defendant's argument that a taint hearing is needed because the Government's filter team procedures were inadequate. "To warrant a taint hearing, Defendants have the burden of showing a factual relationship between [any] privileged information and the prosecution." *United States v. Sharma*, 2019 WL 3802223, at \*5 (S.D.N.Y. Aug. 13, 2019) (internal quotations and citation omitted). Defendants have not met their burden. As discussed above, the Screenshot Emails are not privileged. Nor does Defendant identify any other purportedly privileged material that he contends the prosecution team improperly reviewed.

Defendant's application for disclosure of grand jury minutes is denied because the Screenshot Emails are not privileged, and because Defendant has not pinpointed concrete Government misconduct. *See United States v. Leung*, 40 F.3d 577, 582 (2d Cir. 1994) ("A review

3

of grand jury minutes should not be permitted without concrete allegations of Government misconduct.").

### (3) Defense motion for a *Franks* hearing

Defendant contends that FBI Agent Michael Preis' Affidavit in support of the First Warrant, dated August 11, 2020 ("Preis Affidavit"), contains a "demonstrably false statement" (Def. Mots. at 21–22), *i.e.*, that Defendant had told the Guidehouse lawyers "that his trading in Navigant was based on two Zacks Investment Research Reports provided by his son, Ryan Buyer." Def. Mots. 21 (quoting Preis Aff. (20 MAG 8471) at ¶ 26(tt)). The statement was **not material** to obtaining the warrant. *See United States v. Polanco*, 2020 WL 1503672, at *3 (S.D.N.Y. Mar. 30, 2020) (A defendant seeking a *Franks* hearing "must make a 'substantial preliminary showing' . . . that an affidavit in support of the search warrant contained a deliberate falsehood or a statement made with reckless disregard for the truth which was material to the probable cause determination.").

FBI Agent Preis set forth his extensive background and experience, and he described the investigation and alleged offenses. Preis Aff. at ¶¶ 1, 24–33. Preis underscores the "timing of the trades" and "the fact that Buyer had not traded in Navigant before the 2019 trades" as part of the probable cause showing that an individual had shared material non-public information with Defendant Buyer. *Id.* at ¶ 27  Preis also avers that Buyer acted on that material non-public information when he traded in Navigant stock. *Id.* The Preis Affidavit also details that Defendant Buyer was in contact with individuals who had material non-public information concerning the Navigant transaction; that Defendant Buyer subsequently bought Navigant stock; and that he sold the stock shortly after Guidehouse's August 2, 2019 public announcement of its acquisition of Navigant. *See id.* at ¶¶ 25–26; *see also Pinto-Thomaz*, 352 F. Supp. 3d at 305 (finding probable

cause where affidavits stated that after defendant received material nonpublic information on an acquisition, he contacted two people who then bought shares of acquired company's stock and sold it soon after public announcement of acquisition).

The Preis Affidavit includes the timing of Buyer's purchases of Navigant stock—which occurred shortly after several phone conversations between Defendant and an individual who had access to material non-public information—and is sufficient probable cause. *See United States v. Raymonda*, 780 F.3d 105, 113 (2d Cir. 2015) ("In evaluating probable cause in any given case, a judge must make a practical commonsense decision whether, given all the circumstances set forth in the affidavit before him, there is a fair probability that contraband or evidence of a crime will be found in a particular place." (internal quotations omitted)).

Defendant also contends that because "eleven search warrants [] rely" on the Screenshot Emails, those search warrants "should also be included in the *Franks* hearing." Def. Mots. at 25. As discussed at pages 2–3, above, the Screenshot Emails are not privileged.

### (4) <u>Defense motion to compel production of certain *Brady* material</u>

*Brady v. Maryland* "imposes a constitutional duty on the government to disclose evidence favorable to the accused where such evidence is material either to guilt or to punishment." *United States v. Djibo*, 730 F. App'x 52, 56 (2d Cir. 2018) (citing *Brady v. Maryland*, 373 U.S. 83, 87 (1963)). The Government requested and received files from the Securities and Exchange Commission ("SEC"), and the Government has agreed to "make any necessary productions to the defense in compliance with" its obligation under *Brady*. Gov't Ltr., dated Dec. 19, 2022. The Government satisfies its *Brady* obligation by requesting files from the SEC; reviewing these files; and producing to Defendant any *Brady* materials that the Government identifies contained within

the SEC files. *See id.* Denial of the Brady motion is contingent upon confirmation that the Government in fact produces the SEC files to Defendant.

At the same time, the Government is not required to identify specific categories of exculpatory *Brady* material contained within the discovery Government already produced to Defendant. *See United States v. Kirk Tang Yuk*, 885 F.3d 57, 86 (2d Cir. 2018) ("The government's duty to disclose generally does not include a duty to direct a defendant to exculpatory evidence within a larger mass of disclosed evidence." (internal quotation marks and citation omitted)); *see also United States v. Parnas*, 2021 WL 2981567 (S.D.N.Y. July 14, 2021) ("In the *Brady* context, the Government is under no duty to direct a defendant to exculpatory evidence within a larger mass of disclosed evidence, even when that larger mass is enormous." (internal quotation marks and citation omitted)).

### (5) Defense motion for a bill of particulars

The Indictment advises Defendant Buyer of sufficient specific charges against him. *See Guttenberg*, 2007 WL 4115810, at *5; *see also Pinto-Thomaz*, 352 F. Supp. 3d at 302 (rejecting argument that a bill of particulars was necessary "to particularize exactly what material nonpublic information" was conveyed between defendants). The Indictment clearly describes the nature of the material nonpublic information at issue, and at what time and in what capacity Defendant Buyer acquired this inside information before trading. *See Pinto-Thomaz*, 352 F. Supp. 3d at 302. For example, the Indictment states: "Executive-1's notes, dated March 27, 2018, indicate[] that his 'To Do' list included outreach to consultants about the potential merger" between Sprint and T-Mobile, and that Executive-1 "spoke by telephone with STEPHEN BUYER . . . each of the preceding two days, as well as on March 28, 2018. Also on March 28, 2018, BUYER and Executive-1 played golf together . . . . The next day, on the morning of March 29, 2018, STEPHEN BUYER . . .

purchased approximately 42,675 shares of Sprint in three different trading accounts, at a price of approximately $4.84." Indictment ¶¶ 14–15.[2]

**Conclusion & Order**

    For the reasons stated above, Defendant's motions [Dkt. No. 30] are denied.

Dated: New York, New York
January 31, 2023

*RMB*

RICHARD M. BERMAN, U.S.D.J.

---

[2] The Indictment states that Executive-1 was a T-Mobile Government Affairs executive who was "authorized to mobilize a small, trusted group of lobbyists to develop a strategy for securing regulatory approvals and other . . . support for the merger." *Id.* at ¶ 12. Defendant "had a business and social relationship" with Executive-1, and they "occasionally played golf together." *Id.* at ¶ 13. "Executive-1 was also BUYER's primary contact at T-Mobile." *Id.*