

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

March 3, 2023

**BY ECF AND EMAIL**

The Honorable Richard M. Berman
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

    Re:    *United States v. Stephen Buyer*, 22 Cr. 397 (RMB)

Dear Judge Berman:

    The Government respectfully submits this letter in opposition to the defendant's motion for a mistrial and to strike certain testimony of Anthony Russo.

    A.  **Applicable Law**

    "A defendant's motion for a mistrial may be granted where something has occurred to interfere with the defendant's right to a fair trial." *United States v. Yannai*, 791 F.3d 226, 242 (2d Cir. 2015). A court's power to grant a mistrial should be used only "'with the greatest caution, under urgent circumstances, and for very plain and obvious causes.'" *United States v. Klein*, 582 F.2d 186, 190 (2d Cir. 1978) (quoting *United States v. Perez,* 22 U.S. 579, 580 (1824)). As an alternative to the drastic remedy of a new trial, a district judge has the option of giving a curative instruction. *See*, *e.g., United States v. Fermin*, 32 F.3d 674, 677 (2d Cir. 1994), overruled on other grounds by *Bailey v. United States*, 516 U.S. 137 (1995) (mistrial motion based on testimony of agent regarding defendants' "criminal histories" properly denied where district court gave limiting instruction and any resulting prejudice was "minimal and harmless").

    "A constructive amendment occurs when the charge upon which the defendant is tried differs significantly from the charge upon which the grand jury voted." *United States v. Dove*, 884 F.3d 138,

146 (2d Cir. 2018). To show constructive amendment, a defendant "must demonstrate that either the proof at trial or the trial court's jury instructions so altered an essential element of the charge that, upon review, it is uncertain whether the defendant was convicted of conduct that was the subject of the grand jury's indictment." *United States v. Khalupsky*, 5 F.4th 279, 293 (2d Cir. 2021), *cert. denied sub nom. Korchevsky v. United States*, 142 S. Ct. 761 (2022).

### B. Discussion

The error claimed by the defendant is not in fact an error, and even if it were, it would not come close to creating the "manifest necessity" required to grant the extraordinary remedy of a mistrial.

The defendant claims that the Court erred in overruling the objection to the question "If Mr. Buyer had told you that he bought Sprint stock March 29th, April 3rd, and April 5th in 2018, and sold it in August of 2018, what would you have thought?" (Tr. 346:15-24). The defendant claims that the question improperly made no distinction between the purchases and sales of Sprint stock, when the Government has not charged that the defendant sold his Sprint stock in August 2018 based on inside information.

The question and answer provide no basis for a mistrial, as they did not "broaden the possible bases for conviction beyond the indictment," as would be necessary to show a constructive amendment. *Dove*, 884 F.3d 138, 149 (2d Cir. 2018).

As the Court noted on the record, the Indictment specifically references the defendant's profit from his August 2018 sales of Sprint. (Indictment ¶¶ 10, 23), so the connection of the sales to the charged scheme is fully set forth in the Indictment's allegations. And the relevance of these facts cannot be seriously disputed. The profit the defendant made from his Sprint stock sales is an integral part of the case, is necessary to complete the story of the charged crime, and is essential motive evidence. *See United States v. Mennuti*, 679 F.2d 1032, 1037 (2d Cir. 1982) (evidence of profit from fraud was "relevant to the Govenrment's case" because it "explained why [the defendant] would do what he was said to have done") (internal citation omitted). Indeed, the Government referenced the defendant's $120,000 profit from his sale of Sprint stock in its opening statement without objection. (Tr. 23 ("A few months later, the defendant sold that Sprint stock and made over $120,000.")).

Nor has the Government, through the question or otherwise, argued that the defendant's stock sales constitute an independent basis of insider trading liability. The Government's opening statement made clear to the jury that the wrongful conduct alleged in this case is Buyer's stock *purchases*: "Three times the defendant cheated and used this confidential information *to buy* Sprint stock before the merger was public." (Tr. 23). The Government did not argue in its opening statement that the defendant committed insider trading by virtue of *selling* Sprint stock, and does not intend to argue in closing that the defendant's Sprint sales were based on inside information.

Contrary to defense counsel's suggestion, the exchange with Mr. Russo did not improperly

Honorable Richard M. Berman
United States District Judge
March 3, 2023
Page 3

suggest that the defendant traded based on inside information in August. The Government merely asked—in an effort to respond to the defense's claim that the Government's question lacked a timeframe—what Mr. Russo would have thought if Mr. Buyer had told him about buying Sprint stock in March and April 2018 and selling in August 2018. Mr. Russo responded that he thought it would be "inappropriate" because of T-Mobile's "NDA and our confidentiality" and because it would "violating…the insider trading rules, because you know information that others wouldn't know." (Tr. 346). Mr. Russo's answer implied that the conduct that would violate T-Mobile's insider trading rules would be trading based on "information that others wouldn't know." With respect to the merger, Mr. Russo's testimony, as well as the exhibits in evidence, had already established that by April 29, 2018, T-Mobile and Sprint had announced publicly their plans to merge. In that light, Mr. Russo's answer—about the impropriety of trading based on an informational advantage—clearly pertained only to the March and April 2018 trades.

In any case, nothing about the exchange focused on by the defense could plausibly provide a basis for a claim of constructive amendment. Certainly, the defendant's sales of Sprint stock form "part of a single course of conduct" with the same "ultimate purpose" as the defendant's purchases, *United States v. D'Amelio*, 683 F.3d 412, 419-21 (2d Cir. 2012), and nothing elicited from Mr. Russo falls outside the "core of criminality" of the charged offenses. *See United States v. Vilar*, 729 F.3d 62, 91 (2d Cir. 2013).

Further, the defendant's suggestion that the Government "purposefully elicited testimony about a crime Mr. Buyer has not been charged with" (Dkt. 85 at 2) should be dismissed out of hand. As reflected in the transcript, the date range on the Government's question was added, in the moment, *at the request of the defendant*. (Tr. 346:12-13). There was certainly no targeted effort to "convict Mr. Buyer on the basis of conduct that falls outside the grand jury's indictment." (Dkt. 85 at 2).

Even if the above testimony was admitted in error, the error would not constitute the type of error requiring the extraordinary remedy of a mistrial. "Where an inadmissible statement is followed by a curative instruction, the court must assume 'that a jury will follow an instruction to disregard inadmissible evidence inadvertently presented to it, unless there is an overwhelming probability that the jury will be unable to follow the court's instructions, ... and a strong likelihood that the effect of the evidence would be devastating to the defendant.'" *United States v. Elfgeeh*, 515 F.3d 100, 127 (2d Cir. 2008) (quoting *Greer v. Miller*, 483 U.S. 756, 766 n.8 (1987)) (internal quotation marks omitted). Here, even if the Court improperly admitted Mr. Russo's testimony—which it did not—a curative instruction making clear that the defendant is not charged with trading on inside information in August 2018 would be sufficient to cure any error.

Although the Government does not object to a curative instruction to guard against any possible risk of prejudice, the instruction proposed by the defendant is incorrect and should not be given. Indeed, the instruction suggests that the Court should castigate the Government by describing a question as "improper," when it was not. The defendant further urges the Court to instruct the jury "that Mr. Buyer has not been charged in this case with any crime that involves the sale of Sprint stock in 2018 or at any other time," and that the jury "should not take into account any *sales* of securities

Honorable Richard M. Berman
United States District Judge
March 3, 2023
Page 4

Mr. Buyer might have engaged in that were not identified in the indictment." But these instructions are simply wrong. As noted above, crimes charged certainly "involve[d]" the sale of Sprint stock, and the jury is certainly entitled to consider the fact that the defendant sold the stock in question for a profit. Accordingly, the Government proposes that instead the Court instruct the jury as follows, which would address any putative concern identified by the defendant:

> Yesterday, Mr. Russo testified that purchases or sales by Mr. Buyer of Sprint stock between March and August of 2018 would be inappropriate and violate the insider trading rules. While Mr. Russo may provide testimony regarding whether certain conduct would violate, to his understanding, policies or practices relating to his engagement with T-Mobile, I remind you that I will instruct you on the law applicable to the charges here, including the law of insider trading, and you are the sole deciders of the facts.

Finally, there is no basis to strike Mr. Russo's testimony on the ground that it offered an opinion on the ultimate issue in the case. As a threshold matter, Mr. Russo did not testify that the defendant violated insider trading laws. He testified that, because of "[T-Mobile's] NDA and [T-Mobile's] confidentiality, the trading would violate "the insider trading rules." (Tr. 346 (emphasis added)). This testimony plainly related to T-Mobile's own internal rules and policies on insider trading, which the defendant introduced into evidence as Defense Exhibit D-30. (Tr. 377).

Even if the testimony related to the ultimate issue, it was entirely proper. Under Rule 704 of the Federal Rules of Evidence, lay opinion testimony "is not objectionable just because it embraces an ultimate issue." The Court properly allowed the testimony because it was "rationally based on the witness's perception," "helpful…to determining a fact in issue," and "not based on scientific, technical, or other specialized knowledge." Fed. R. Evid. 701.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By:   /s/
Jordan Estes
Kiersten A. Fletcher
Margaret Graham
Assistant United States Attorneys
(212) 637-2543/2238/2923

cc:   Counsel for Stephen Buyer (by ECF and email)