UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
UNITED STATES OF AMERICA,
                  Government,

   -against-

STEPHEN BUYER,
                  Defendant.
------------------------------------------------------------X

22 CR. 397 (RMB)

**DECISION & ORDER**

### I. Background

On March 8, 2023, the Court reserved decision with respect to the Defense motion to dismiss following the close of the Government's case. See Fed. R. Crim. P. 29(b) ("The court may reserve decision on the motion, proceed with the trial (where the motion is made before the close of all the evidence), submit the case to the jury, and decide the motion either before the jury returns a verdict or after it returns a verdict of guilty or is discharged without having returned a verdict.") The Government opposed the defense motion. See Trial Transcript, dated March 7, 2023 at 1117:25-1118:1 (AUSA: "On venue . . . the evidence is that all of these trades took place on the New York Stock Exchange."); Id. at 1116:6-10 (AUSA: [With respect to the substantive counts] "Mr. Russo [T-Mobile Vice President for Federal Legislative Affairs] testified that he made his core group aware by April 3rd, at the latest. He testified that Mr. Buyer was in the "core" group. So the testimony is clear from Mr. Russo that by April 3rd, Mr. Buyer is read into the merger. He trades April 5th."); Id. at 1116:24-25-1117:1-12 (AUSA: "On June 12th, there's that email . . . Government Exhibit 210. Alicia Harkness [Partner, Guidehouse], who was under the tent on the merger, sends an email to Mr. Stansbury [Sales Leader at Guidehouse], where it makes clear a "combination" is happening . . . Sixteen minutes later, Mr. Stansbury calls Mr. Buyer, and they have a call . .

1

. They exchange texts throughout the night. And then they have a seven-minute call later. And then after midnight that night, Mr. Buyer starts researching Navigant on the Schwab web page. The next morning, he starts trading in Navigant. And his trades are incredibly substantial. $28,000 - - or 28,000 shares of Navigant, I think it's over $600,000 worth of Navigant purchased that day, a stock he's never purchased before.")

At the time the motion was made, the Court stated that it would rule on the motion following the jury verdict in this case. The Court also advised the parties that if it were to decide the motion (on March 8th), it would deny the motion with respect to both venue as well as the four substantive counts in the Indictment. See Trial Transcript, dated March 8, 2023 at 1247:3-8 (COURT: "I'm reserving decision on that motion, [i.e.] the defense motion under Rule 29 to dismiss focusing on venue and the substantive counts. [As] a heads up, were I to rule today, it would likely be that I would deny the motion at this stage on both venue and the substantive challenges . . .So [D]ecision [R]eserved.").[1]

## II.  Legal Standard

When resolving a motion under Rule 29(a), the Court is required to view the evidence "in the light most favorable to the government" and to draw all reasonable inferences in the government's favor. United States v. Autouri, 212 F.3d 105, 114 (2d Cir. 2000). If the Court reserves decision on a Rule 29(a) motion, "it must decide the motion on the basis of the evidence

---

[1] And, on March 9, 2023, the Court similarly reserved decision until after the jury's verdict with respect to the defense's "renewed motion to dismiss". See Trial Transcript, dated March 9, 2023 at 1692:20-25, 1693:1-5 (DEFENSE COUNSEL ALONSO: "I looked up while during the summation your Rule 29 deferral. You had said that you were deferring, and that if you were to rule, you would likely deny. You never did rule. I don't know if you were saying deferring until after a potential guilty verdict or until now." COURT: "I thought I said that too. Maybe not, but that's my intention." DEFENSE COUNSEL ALONSO: "In light of the government's summation, we renew it now." COURT: "Okay. Fair enough. Same response from me.")

2

at the time the ruling was reserved." United States v. Truman, 688 F.3d 129, 139 (2d Cir. 2012) (internal citation omitted).

"The test established by the Supreme Court requires [the trial court] to determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Temple, 447 F. 3d 130, 136 (2d Cir. 2006) (internal citation and quotations omitted).

With respect to venue, Fed. R. Crim. P. 18 provides that the Government must prosecute an offense in a district where the offense was committed. "[E]xecution of trades on the New York Stock Exchange and American Stock Exchange is sufficient to establish venue in the Southern District of New York." United States v. Svoboda, 347 F. 3d 471, 484 (2d Cir. 2003)

### III.  Analysis

Following the jury's March 10, 2023 verdict of guilty on all counts in the Indictment, the Court rules as follows on the Defense motion to dismiss made on March 7, 2023 and renewed on March 9, 2023.[2]

**Venue**

The venue requirement was readily met by the Government - - and by a preponderance of the evidence. Venue was established because, among other things, the Defendant's trades took place on the New York Stock Exchange which is headquartered in Manhattan. See Trial Transcript dated March 3, 2023 at 725: 2-7 (AUSA: "Mr. Carocci, you mentioned the New York Stock Exchange earlier, what is that?" THOMAS CAROCCI: "So that is an exchange where

---

[2] The parties also made written submissions each dated March 7, 2023 with respect to the Defense motion following the close of the Government's case.

publicly traded companies' stock, the shares of stocks, are traded amongst investors." AUSA: "Where is the New York Stock Exchange headquartered?" THOMAS CAROCCI: "New York, Manhattan."); see also Trial Transcript dated March 6, 2023 at 854-862 (Matthew Levine, employed by Virtu Financial a financial services company headquartered in Manhattan, New York, with data centers located, among other places, in Purchase, New York. Mr. Levine had testified that Virtu executed purchases orders for both Sprint in 2018 and for Navigant ("NCI") in 2019.). Carl Vallese, employed by Two Sigma Securities, a broker dealer company, located in Manhattan, New York testified that in 2019, Two Sigma had executed trades involving Navigant. See Trial Transcript dated March 6, 2023 at 842-850.

**Securities Fraud (Insider Trading)– Counts One through Four**

With regard the substantive securities counts - - in the light most favorable to the government - - and at the close of the Government's case, the Court found the following:

1- The evidence presented in the Government's case in chief included that Defendant's trades in Sprint and Navigant securities, respectively, were "timed" to occur before the public announcement of renewed merger talks between T-Mobile and Sprint, and before the public announcement of the acquisition by Guidehouse of Navigant. Sprint stock was purchased by the Defendant on or about March 29, 2018, April 3, 2018 and April 5, 2018. A public announcement of the proposed T-Mobile/Sprint merger was made on April 29, 2018. Similarly, Navigant stock was purchased by the Defendant on or about June 13, 2019, June 21, 2019, June 25, 2019, July 9, 2019, July 19, 2019, July 26, 2019

and August 1, 2019. The public announcement of Guidehouse's acquisition of Navigant was made on or about August 2, 2019 (GX 700).[3]

2- At the time of the stock purchases, Defendant had very significant consulting relationships with both T-Mobile and with Guidehouse. His principal contact at T-Mobile was Anthony Russo, Vice President for Federal Legislative Affairs. One of his key contacts at Guidehouse was Chris Stansbury, Sales Leader. See Trial Transcript dated March 1, 2023 at 21-24 (AUSA: "So tell us in 2018 who was in this initial core group you described that you brought in in the initial stages [of the T-Mobile/Sprint merger]?" ANTHONY RUSSO: "Manus Cooney, Chris Putala, **Steve Buyer**, Henry Waxman, Billy Tauzin and John Sununu.") (emphasis added); and Trial Transcript dated March 3, 2023 at 529:15-22 (AUSA: "And when you say he [Defendant] was a subcontractor for you, what do you mean? What was he doing for you?" ALICIA HARKNESS, Partner, Guidehouse: "We had a monthly arrangement for him to provide advice and services for our firm." AUSA: "When your say your firm, are you referring to PwC or Guidehouse?" ALICIA HARKNESS: "Initially, PwC. But then it transferred over to Guidehouse." AUSA: "Who was Mr. Buyer's primary contact at Guidehouse?" ALICIA HARKNESS: "Chis Stansbury was our primary point of contact with Mr. Buyer.")

3- Defendant's first purchase of Sprint stock occurred on March 29, 2018, i.e., literally in between golf games which included Defendant, Anthony Russo, Mr. Russo's father and his son on March 28, 2018 and March 30, 2018.

---

[3] Sales of Sprint stock occurred on August 6, 2018 and August 7, 2018; and sales of Navigant stock occurred on August 2, 2019 and September 23, 2019. Mr. Buyer's total profits were over $349,000.00

5

4- Defendant's initial purchase of Navigant stock came shortly after Chris Stansbury, Sales Leader at Guidehouse, received a June 12, 2019 email from Alicia Harkness, referencing "synergy" and "combination" (GX 210) and Chris Stansbury's June 12, 2019 telephone conversations and text messages with the Defendant.

5- The Defendant's business partner, and lifelong friend, Michael Copher, had dinner with Chris Stansbury (on June 19, 2019) at which Chris Stansbury asked: "has he [Defendant] figured it out yet?" (Trial Transcript dated March 1, 2023 at 115:19). And, when Copher soon after asked Stansbury what he was talking about, Stansbury advised Copher that "your partner [i.e. Defendant] thinks we are, we should, we're gonna, we need to buy somebody." Id. at 115:24-25. Thereafter, Copher texted the Defendant asking "Who do you think Guidehouse is trying to buy?" Id. at 119:13 and GX 401, 401A. Copher had a follow up conversation with Defendant Buyer in which he told Buyer **"[W]hatever you're thinking about doing, you probably shouldn't do it."** Id. at 124:11-12 (emphasis added).

6- Following Defendant's interview by attorneys for Guidehouse - - based upon a FINRA inquiry - - - Defendant sent a signal message to Chris Stansbury in which he stated: "I need to see you. Please . . . I will catch next flight. I was interviewed and told them I bought and I figured it was either Huron or Navigant on my own which is true and no one ever told me or uttered the word Navigant which is also true . . . I had seen Zach's research that recommend it around June 8 as a buy and had sent an [e]mail to my son about it . . . he never replied." (GX 406) This message was timed to "disappear" within 5 minutes of being sent.

6

7- Defendant traded Sprint and Navigant stock across multiple accounts. In at least one of these accounts which he controlled, Defendant traded only Sprint and Navigant stock.

## IV. Conclusion

For the reasons stated above, the Rule 29 motion is denied.

Dated: New York, New York
       March 14, 2023

*RMB*
_____
RICHARD M. BERMAN, U.S.D.J.