UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
                                                        :

UNITED STATES OF AMERICA         :

                                                        :      22 Cr. 397 (RMB)

          - v. -                         :

STEPHEN BUYER,                   :

                          Defendant.   :

-------------------------------------------------------x

# THE GOVERNMENT'S SENTENCING SUBMISSION

                                                          DAMIAN WILLIAMS
                                                          United States Attorney
                                                          Southern District of New York

Kiersten A. Fletcher
Margaret Graham
Assistant United States Attorneys
      *- Of Counsel -*

i

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................... 1

BACKGROUND .................................................................................................................. 1

DISCUSSION ....................................................................................................................... 6

   I. The Guidelines Range and the Defendant's Obstruction of Justice. ........................ 6

   II. A Substantial Sentence Is Necessary in this Case. .................................................. 9

      A. Applicable Law ................................................................................................. 9

      B. Discussion ........................................................................................................ 10

CONCLUSION .................................................................................................................... 14

# **TABLE OF AUTHORITIES**

## Cases

*Gall v. United States*, 552 U.S. 38 (2007) ................................................................................. 9

*Robles v. United States*, No. 14 Civ. 9311 (LAP) (S.D.N.Y. Mar. 16, 2017) .............................. 12

*United States v. Cassiliano*, 137 F.3d 742 (2d Cir. 1998) ............................................................ 8

*United States v. Dunnigan*, 507 U.S. 87 (1993)...................................................................... 7, 8

*United States v. Gupta*, 747 F.3d 111 (2d Cir. 2014) ................................................................ 11

*United States v. Gupta*, 904 F. Supp. 2d 349 (S.D.N.Y. 2012) ................................................. 11

*United States v. Livesay*, 587 F.3d 1274 (11th Cir. 2009) ........................................................ 11

*United States v. Salim*, 549 F.3d 67 (2d Cir. 2008) .................................................................... 8

*United States v. Shonubi*, 998 F.2d 84 (2d Cir. 1993) ................................................................ 8

*United States v. Zukerman*, 897 F.3d 423 (2d Cir. 2018) ......................................................... 11

## **Statutes**

18 U.S.C. § 3553(a)(1)-(7)............................................................................................................ 9

18 U.S.C. § 3553(a)(1), (2)(A) ................................................................................................... 10

18 U.S.C. § 3553(a)(2).............................................................................................................. 10

USSG § 1A1.1 ............................................................................................................................ 11

USSG § 2B1.1(b)(1)(G).............................................................................................................. 6

USSG § 2B1.4(a) ........................................................................................................................ 6

USSG § 2B1.4(b)(1) .................................................................................................................... 6

USSG § 3C1.1............................................................................................................................ 6, 8

**PRELIMINARY STATEMENT**

The Government respectfully submits this sentencing memorandum in advance of the sentencing of Stephen Buyer ("Buyer" or the "defendant") scheduled for July 11, 2023. The defendant, a former member of Congress, abused his relationship of trust with two of his clients to earn illegal profits and obstructed justice to conceal his crimes, including by testifying falsely under oath at trial. For these reasons and others set forth below, the Court should impose a substantial sentence of imprisonment, though one below the applicable United States Sentencing Guidelines (the "Guidelines" or "USSG") Range of 41 to 51 months. Specifically, the Government submits that a term of imprisonment of 36 months would be sufficient but not greater than necessary to serve the goals of punishment under the facts and circumstances of this case.

**BACKGROUND**

Beginning in 2011, the defendant worked as a consultant to private companies in areas in which he gained expertise in Congress: the telecommunications industry and sectors involving the United States Department of Veterans Affairs and the United States Department of Defense. As proven at trial, in 2018 and 2019, the defendant misappropriated material non-public information ("MNPI") that he learned as a trusted consultant and used that MNPI to place timely, profitable securities trades in brokerage accounts in his own name and the names of others. In particular, the defendant obtained MNPI in connection with two corporate mergers related to his consulting work, first with respect to T-Mobile's contemplated merger with Sprint in 2018 and again with Guidehouse's contemplated acquisition of Navigant in 2019. The defendant traded in his own account, the accounts of several family members, and an account he opened for his paramour. The defendant tried to cover up his insider trading by, among other things, testifying falsely at trial regarding the reasons for his trading, communicating with a Guidehouse representative about his trading on Signal, and by providing false and misleading information to Guidehouse

1

representatives responding to an inquiry by the Financial Industry Regulatory Authority ("FINRA") into the defendant's trading.

*T-Mobile/Sprint Insider Trading*

By no later than March 27, 2018, Anthony Russo, a senior Government Affairs Executive at T-Mobile, learned that Sprint and T-Mobile were actively discussing a potential merger. GX 707. Mr. Russo testified at trial that these merger discussions were highly confidential. *See* Transcript of Trial ("Trial Tr.") 281 ("anything that was concerning [the merger] was to be confidential and proprietary to the company"). Mr. Russo also testified that after learning of the merger discussions, he needed to urgently communicate the news to his group of core consultants, which included the defendant. *See* Trial Tr. 260-61 ("There wasn't a minute to spare before day one . . . . The top [priority] would be to get my internal team up to speed and then my core consultants."). During these critical early days, when Mr. Russo's top priority was to get his core consultants "up to speed," Mr. Russo and the defendant were on a golf trip together in Florida, from March 28 through 30, 2018. *See* Trial Tr. 263-65.

While Mr. Russo did not remember the exact moment that he told the defendant of the merger discussions, his testimony confirmed that the defendant was aware of the Sprint/T-Mobile as of April 3, 2018, at the very latest. *See* Trial Tr. 314 (testifying that as of April 3, 2018, his "core legislative group . . . [including] Steve Buyer" was "under the tent"). Trading records introduced at trial demonstrated that the defendant bought Sprint shares while on the golf trip with Mr. Russo and in the days that followed in his trading accounts, and the trading accounts of his family members, as set forth below:

| Order Date | Transaction in Sprint Stock |
|---|---|
| March 29, 2018 | Purchase of 20,000 shares |
| March 29, 2018 | Purchase of 20,000 shares |
| March 29, 2018 | Purchase of 2,675 shares |

| April 3, 2018 | Purchase of 10,000 shares |
| April 5, 2018 | Purchase of 60,000 shares |

At trial, the defendant testified that he did not learn of the Sprint/T-Mobile merger until a meeting on April 10, 2018. *See* Trial Tr. 1414.[1] The defendant further testified that his trading in Sprint had nothing to do with information he learned from Mr. Russo, and instead that he traded based on his research into Sprint, using, among other things, data from Zacks, an investment research firm. *See* Trial Tr. 1375. In support of this defense, the defendant introduced at trial an April 2, 2018 printout of Sprint trading data from Zacks, which contained handwritten, purportedly contemporaneous, notes (the "Zacks Sprint Printout"). DX B-04. According to the defendant, Sprint was on a "watchlist" of stocks that he followed and kept in a booklet, and he found the Zacks Sprint Printout "folded and stuck in that little booklet" prior to his trial testimony. Trial Tr. 1374.

After the Sprint/T-Mobile merger was announced, the defendant sold the Sprint stock he had purchased in all four accounts for a total gain of approximately $126,404. PSR ¶ 25.

*Guidehouse/Navigant Insider Trading*

The evidence introduced at trial showed that from June 13, 2019, through August 1, 2019, the defendant misappropriated MNPI he learned through his consulting work for Guidehouse and, in violation of duties he owed to Guidehouse, used that MNPI to make timely trades in Navigant stock in advance of the August 2, 2019, announcement that Guidehouse would acquire Navigant.

As Guidehouse partner Alicia Harkness testified at trial, she first became aware of a potential Navigant transaction in the Spring of 2019 – information that was highly confidential. *See* Trial Tr. 489-90. Ms. Harkness testified that she inadvertently sent an email to Christopher

---

[1] Mr. Russo was asked about the alleged April 10 meeting on cross-examination, and testified that he had no recollection of such a meeting and, in any event Buyer "was already under the tent way before [April 10]." Trial Tr. 462.

3

Stansbury that referenced "synergies" and a "combination," and that Mr. Stansbury was the primary contact with the defendant. *See* GX 210; Trial Tr. 520-522, 529. Phone and brokerage account records introduced at trial showed that Mr. Stansbury communicated with the defendant right after he received the email from Ms. Harkness, and that the defendant searched for Navigant on his Charles Schwab trading account later that night. *See* GX 605, 540. Before purchasing Navigant stock, the defendant emailed his son a Zacks research report recommending Navigant stock and indicating he was "thinking of buying" the stock. *See* GX 302. Before the defendant's son could respond – and less than 24 hours after Ms. Harkness emailed Mr. Stansbury about the "combination" – the defendant started buying Navigant in his account, the accounts of several family members, and an account he opened in the name of Karen Hensel. The defendant kept buying Navigant shares over the next several weeks, as set forth below:

| Order Date | Transaction in Navigant Stock |
|---|---|
| June 13, 2019 | Purchase of 28,300 shares |
| June 21, 2019 | Purchase of 825 shares |
| June 25, 2019 | Purchase of 3,980 shares |
| July 9, 2019 | Purchase of 129 shares |
| July 10, 2019 | Purchase of 2,000 shares |
| July 19, 2019 | Purchase of 3,700 shares |
| July 26, 2019 | Purchase of 2,700 shares |
| August 1, 2019 | Purchase of 5,020 shares |

After the Guidehouse/Navigant acquisition was announced, the defendant sold all of the Navigant shares he had purchased in his and others' accounts, for a profit of approximately $223,442.61. PSR ¶ 35.

As counsel for Guidehouse Kelly Koscuiszka testified at trial, in or about October 2019, Guidehouse received a FINRA inquiry into the defendant's trades and hired counsel to conduct interviews in response to the inquiry. *See* Trial Tr. 655. As part of that investigation, Ms. Koscuiszka testified that she interviewed the defendant, who told her that he bought Navigant

4

shares based on Zacks research and did not discuss Navigant with Mr. Stansbury. *See* Trial Tr. 683.

Two days after the defendant was interviewed by Ms. Koscuiszka, notwithstanding the defendant's claim that he did not trade based on any information from Ms. Stansbury, the defendant sent Mr. Stansbury the following Signal message introduced at trial:



*See* GX 406; Trial Tr. 1512-1516. Despite the defendant's acknowledgement in his Signal message that he "figured it" – *i.e.* the target of Guidehouse's potential acquisition – was either Navigant or Huron, the defendant testified at trial that he bought Navigant stock because of the "cup and handle" trading strategy he learned from his father. *See* Trial Tr. 1574-75.

5

In total, the defendant's insider trading in Sprint and Navigant stock resulted in illegal profits of approximately $349,846.61. *See* PSR ¶ 39.

## DISCUSSION

**I. The Guidelines Range and the Defendant's Obstruction of Justice.**

The United States Probation Office calculates the applicable offense level to be 20, based on a base level offense of 8 pursuant to USSG § 2B1.4(a) and a 12-level enhancement based on a gain of approximately $349,846.61 pursuant to USSG §§ 2B1.4(b)(1) and 2B1.1(b)(1)(G). PSR ¶¶ 11, 45-46, 49. In reaching this calculation, the Probation Office deferred to the Court as to the applicability of a two-level enhancement for obstruction of justice pursuant to USSG § 3C1.1. For the reasons set forth below, the Government submits that a two-level enhancement is appropriate pursuant to USSG § 3C1.1, because the defendant attempted to obstruct justice by creating fake documents and communicating by Signal to avoid being caught, and because the defendant committed perjury when he testified falsely in his defense at trial.

As the Government made clear to the Probation Office in its objection to the initial PSR, the defendant's testimony was replete with lies designed to conceal his crimes from the jury and avoid the consequences of his conduct. It included, among other things, (1) the introduction of the Zacks Sprint Printout, on which the defendant wrote fictitious, after-the-fact justifications to conceal the real reason that he had traded in Sprint, which was the MNPI he received from Russo; (2) the defendant's communication by Signal message with the source of the Navigant MNPI in an effort to get their stories straight when aware of the FINRA inquiry, and (3) the defendant's false testimony at trial regarding his reasons for purchasing Navigant and Sprint stock. In other words, from the time the defendant placed the trades through his testimony at trial, the defendant provided specific, elaborate, and fictitious explanations for the most devastating evidence against

6

him — evidence that that was clearly contradicted by other evidence at trial and by the jury's verdict.

The defendant argues the obstruction enhancement should not apply because no witnesses at trial, apart from the defendant, interpreted the Signal message and therefore the defendant's testimony about the message was not impeached. This argument misses the mark. First, the obstructive nature of the Signal message needs no interpretation because it is apparent on its face: the defendant was plainly using an encrypted application to communicate with Mr. Stansbury to get their stories straight, with the defendant telling Mr. Stansbury what he allegedly said to Guidehouse's lawyers in his interview (though this was contradicted by Ms. Koscuiszka's trial testimony). Second, the Signal message and the defendant's trial testimony cannot be reconciled, which means that either the defendant's trial testimony was false, or the defendant was offering Mr. Stansbury a false story in the Signal message, in the hopes that Mr. Stansbury might align his own story with the defendant's. In the Signal message, the defendant told Mr. Stansbury that he figured "it" (that is, the target of Guidehouse's merger) was Navigant. At trial, he testified that he relied on a cup and handle trading strategy in deciding to purchase Navigant shares. And both the Signal message and the defendant's testimony were at odds with the Zacks email the defendant sent his son that neither mentioned cup and handle nor what the defendant "figured."

The defendant also contends that his own false testimony cannot serve as basis for an obstruction enhancement because Mr. Russo's contrary, and assertedly "self-serving," testimony is insufficient in the absence of jury findings as to specific lies the defendant told. (Def. Mem. 13-14). This argument parses the defendant's lies far too narrowly and is wrong on the law.

"[A] defendant's right to testify does not include a right to commit perjury." *United States v. Dunnigan*, 507 U.S. 87, 96 (1993). "Under a proper determination that the accused has committed perjury at trial, an enhancement of sentence is required by the Sentencing

7

Guidelines." *Id*. at 98. "To base a § 3C1.1 enhancement for 'Obstructing or Impeding the Administration of Justice' upon the giving of perjured testimony, a sentencing court must find that the defendant 1) willfully 2) and materially 3) committed perjury, which is (a) the intentional (b) giving of false testimony (c) as to a material matter." *United States v. Salim*, 549 F.3d 67, 73 (2d Cir. 2008) (internal quotation marks and brackets omitted). Further, "[t]he facts necessary to support an obstruction-of-justice enhancement need be proven only by a preponderance of the evidence." *United States v. Cassiliano*, 137 F.3d 742, 747 (2d Cir. 1998). "In determining the intent with which a defendant acted, the district court is entitled to rely on circumstantial evidence and on all reasonable inferences that may be drawn from all of the evidence." *Id*.

The defendant's testimony was replete with false claims about the reasons for his trades: the defendant falsely asserted that he never learned about the Sprint merger before April 10, 2018 and that his trades were lawful and based on Zacks research, not MNPI. The jury necessarily found this testimony to be false when it returned guilty verdicts on the Sprint counts. The defendant similarly falsely claimed that he had no material nonpublic information from Guidehouse when he purchased Navigant shares and that his purchases had nothing to do with information he learned from Mr. Stansbury. Here, too, the jury necessarily found the defendant's testimony to be false when it returned guilty verdicts on the Navigant counts. This is, therefore, not a circumstance of potential "confusion, mistake or faulty memory," *United States v. Shonubi*, 998 F.2d 84, 88 (2d Cir. 1993) (internal quotation marks omitted) (quoting *United States v. Dunnigan*, 507 U.S. 87, 95 (1993)), but rather a situation where the defendant gave willfully false testimony about a material matter, *Shonubi*, 998 F.2d at 87. And certainly, the evidence at trial established more than a preponderance of the evidence that the defendant lied willfully on the stand about highly material—indeed key—facts. Accordingly, an enhancement for obstruction of justice is appropriate here.

**II.  A Substantial Sentence Is Necessary in this Case.**

The Government submits that a substantial term of imprisonment of 36 months' imprisonment would be sufficient but not greater than necessary in this case. Given the lengthy and protracted nature of the defendant's crime, the sophistication and deception inherent in the crime and the defendant's efforts to obstruct justice to conceal his crime, a significant term of imprisonment is necessary to meet the statutory ends of sentencing, including just punishment, specific and general deterrence, and promoting respect for the law.

**A.  Applicable Law**

The Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions," *Gall v. United States*, 552 U.S. 38, 46 (2007), and district courts are required to treat them as the "starting point and the initial benchmark" in sentencing proceedings. *Id.* at 49.

After calculating the Guidelines, the Court must consider seven factors: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant," (2) the purposes of sentencing discussed in the next paragraph, (3) "the kinds of sentences available," (4) the Guidelines range itself, (5) any relevant policy statements by the Sentencing Commission, (6) "the need to avoid unwarranted sentence disparities among defendants," and (7) "the need to provide restitution to any victims." 18 U.S.C. § 3553(a)(1)-(7); *see also Gall*, 552 U.S. at 49-50 & n.6.

In determining the appropriate sentence, Section 3553(a) directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

(A)  to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B)  to afford adequate deterrence for criminal conduct;
(C)  to protect the public from further crimes of the defendant; and
(D)  to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

9

18 U.S.C. § 3553(a)(2).

   **B. Discussion**

*First*, the nature and seriousness of the offense and the need to provide just punishment warrant a significant sentence, and specifically one of 36 months' imprisonment. *See* 18 U.S.C. § 3553(a)(1), (2)(A). The defendant engaged in a protracted course of illegal conduct over a multi-year period. In 2018, the defendant abused his relationship of trust and confidence with his client, T-Mobile, and stole T-Mobile's confidential business information to make profitable trades for himself, his family members, and his paramour. And based on his professional experience and sophistication, the defendant understood that it was wrong and illegal to steal that information from these companies and use it for his personal gain. The defendant created a false paper trail in the form of the Zacks Sprint Printout to cover his tracks and provide a purportedly innocent explanation for his trades. In 2019, the defendant again stole confidential information from his client Guidehouse and used it to place profitable securities trades for himself, his family, and his paramour. And again, he sought to cover his tracks by sending his son an email setting forth a false cover story, lying to Guidehouse counsel, and seeking to get his story straight with the person at Guidehouse who gave him MNPI. Such conduct merits significant punishment at sentencing.

*Second*, the needs for the sentence imposed to promote respect for the law and to afford adequate deterrence to criminal conduct warrant a significant sentence. The defendant's criminal activity has broad, systemic consequences, including a tendency to undermine the integrity of U.S. financial markets. Rather than engaging in fair and legitimate investing activity, the defendant used the illegal edge he got from stealing information from his clients about contemplated mergers and acquisitions to guarantee himself and his loved ones hundreds of thousands of dollars in profits. This activity undermines the public confidence in the fairness of financial markets and erodes the public's trust. The Court should take these broader consequences into account in

fashioning a sentence that is just and that promotes the rule of law. It must send a message to the investing public that traders like the defendant will not be permitted to game the system to get guaranteed profits.

The defendant's request for a non-custodial sentence should be rejected outright as insufficient to achieve the important goal of general deterrence. The sophistication of this scheme, including the means described above, and others like it, make the crime of insider trading particularly difficult to detect and prosecute. *See United States v. Gupta*, 904 F. Supp. 2d 349, 355 (S.D.N.Y. 2012), *aff'd*, 747 F.3d 111 (2d Cir. 2014) ("As this Court has repeatedly noted in other cases, insider trading is an easy crime to commit but a difficult crime to catch. Others similarly situated to the defendant must therefore be made to understand that when you get caught, you will go to jail."); *United States v. Zukerman*, 897 F.3d 423, 429 (2d Cir. 2018) ("Considerations of…deterrence argue for punishing more heavily those offenses that either are lucrative or are difficult to detect and punish, since both attributes go to increase the expected benefits of a crime.") The defendant's conviction was obtained only after years in which the defendant's criminal conduct went undetected and through the expenditure of significant law enforcement resources. For that reason, when crimes like this one are uncovered and successfully prosecuted, it is critical that they serve as examples to other insider trading criminals and would-be criminals. *See id.* Here, the imposition of a significant term of incarceration is critical to that end. It is that element of punishment that is necessary to effectively prevent people from engaging in such crime in the first place. *Cf. United States v. Livesay*, 587 F.3d 1274, 1279 (11th Cir. 2009) ("[I]t is difficult to imagine a would-be white-collar criminal being deterred from stealing millions of dollars from his company by the threat of a purely probationary sentence."). Moreover, the sentence must be sufficient lengthy to achieve its goals, including just punishment and deterrence. *See generally* USSG § 1A1.1 (Policy Statement) ("Congress sought proportionality in sentencing through a

system that imposes appropriately different sentences for criminal conduct of differing severity."); *Robles v. United States*, No. 14 Civ. 9311 (LAP), 2017 WL 1025993, at *3 (S.D.N.Y. Mar. 16, 2017) (noting that "a longer sentence" may be appropriate "given the seriousness of the offense" and "for the purpose of deterrence").

A substantial sentence is similarly necessary for specific deterrence. The defendant engaged in this crime through repeated acts of deception and obstruction, including by creating a paper trail to provide legitimate support for his trades, communicating over an encrypted application in an effort to obstruct a FINRA inquiry, and ultimately lying under oath during trial. These actions show that the defendant's actions were not some momentary lapse or fleeting mistake; they were the actions of someone who knew what he was doing was wrong and took precautions over a period of years to evade detection. Sentencing in this case should be sufficient to account for this heightened level of culpability and the type of criminality evidenced by the defendant's actions.

In arguing for a non-custodial sentence, the defendant understandably spends the majority of his submission focusing on his personal life and characteristics, as well as his military service, rather than the facts described above. While the Government agrees the defendant's military and public service are commendable, and the various other mitigating factors relied upon by the defendant should be taken into account, they do not justify the departure the defendant seeks, and instead support a modest variance and a below-Guidelines sentence of 36 months' imprisonment. A modest variance would reflect the defendant's contributions to his country while still addressing the other aims of sentencing.

A variance of the magnitude proposed by the Government would also adequately take into consideration the seriousness of the defendant's criminal and the ways in which the defendant's personal circumstances are aggravating rather than mitigating. Indeed, the defendant appears to

12

have enjoyed a wholesome family life, is highly intelligent, and was an accomplished professional, reaching the highest levels of government and private practice in this country before committing the crimes at issue in this case. These circumstances are not mitigating; they exacerbate the defendant's culpability. Unlike others who appear before this Court for sentencing after living a life of limited opportunities, poverty, drug addiction or other difficulties, the defendant had every opportunity to achieve success – and indeed did so – ethically and lawfully. But that was not enough for the defendant. Despite his legitimate success, he chose to engage in behavior he knew to be unlawful in order to line his pockets. By the time of his arrest, the defendant had spent many years earning a high income as a professional; he was able to purchase a home, provide for his family, start a successful business, and amass a net worth of several million dollars. PSR ¶ 95. As a former lawyer and member of Congress, he knew the law prohibited his conduct and he chose to break the law anyway to make even more money for himself. These facts warrant a significant sentence of imprisonment in this case.

Although the defendant claims that he feels "remorse for the heartache he has caused his family," this claim rings hollow in light of the way in which the defendant has consistently conducted himself during the pendency of this case, up to and including certain aspects of his sentencing submission. In advance of trial, the defendant repeatedly lied about his conduct, and suggested he could not receive a fair trial if tried before a judge and jury that differed from him politically, a theme that appears in many of the letters submitted in connection with sentencing. *See, e.g.,* Def. Mem. Ex. AA. These tactics demonstrate the defendant's continued refusal to accept responsibility for his conduct despite the jury's unanimous verdict.[2]

---

[2] Consistent with his desire to avoid the consequences of his criminal conduct, the defendant seeks to withhold any payment of restitution to the victims of his crime while he appeals his conviction. The defendant offers no legal basis for this request to stay a portion of the judgment in this case and his request should be denied.

In sum, the defendant's personal history, characteristics, and military service, even when taken together do not justify the non-custodial sentence the defendant seeks. Instead, the sentence should reflect the particular facts and circumstances of this crime – the defendant's involvement in a brazen, deceptive scheme to earn hundreds of thousands of dollars. A significant sentence is warranted in this case.

## **CONCLUSION**

The Court should sentence the defendant to a below-Guidelines sentence of 36 months' imprisonment in this case.

Dated: New York, New York
      June 21, 2023

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By: _____
Kiersten A. Fletcher
Margaret Graham
Assistant United States Attorneys
Tel. (212) 637-2238/2923